**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rene SALINAS–SALINAS,
Defendant-Appellant.**

**No. 76–4109.**

United States Court of Appeals,
Fifth Circuit.

July 5, 1977.

Daniel V. Alfaro, Corpus Christi, Tex., for defendant-appellant.

Edward B. McDonough, U. S. Atty., Mary L. Sinderson, George A. Kelt, Jr., James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before COLEMAN, Circuit Judge, KUNZIG, Associate Judge,[*] and GEE, Circuit Judge.

COLEMAN, Circuit Judge.

Appellant, Rene Salinas-Salinas, along with Vicente Hernandez, Jr., was indicted on July 8, 1976, of (1) conspiracy to unlawfully possess with intent to distribute a quantity of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846, (2) possession with intent to distribute approximately 4,545 pounds of marijuana in violation of 21 U.S.C. § 841(a)(1), and (3) conspiracy to import marijuana into the United States from Mexico in violation of 21 U.S.C. §§ 952(a) and 963. Both defendants filed motions to suppress and a hearing was held on those motions. Following the hearing the government dismissed the indictment as to Hernandez. Salinas waived his right to a jury trial and the case was submitted to the Court on the evidence received on the motion to suppress. He was found guilty of all three counts and was sentenced to three consecutive 3-year terms and a special parole term of two years on each count.

In this appeal, Salinas raises several issues. Since we find that the evidence was insufficient to sustain a conviction on any of the three counts, we reverse on that issue alone.

## I. *Facts*

Viewed in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the facts are as follows:

[*] Associate Judge of the United States Court of Claims, sitting by designation.

At approximately 1:40 a. m. on July 6, 1976, U. S. Customs Officer Gary Grahn received a call from a "lookout" notifying him that "the truck was on the bridge". Officer Grahn instructed Officer Perpetua to pick up and follow a PeMex truck (Mexican petroleum tanker) which had just crossed the International Bridge into the United States from Mexico at Hidalgo, Texas. The truck, proceeding through town, was picked up and "tailed out" by Officer Perpetua approximately five minutes after it had crossed the bridge.

No evidence was offered as to who owned the truck, who was driving the truck, or why a lookout had been placed on the truck.

Perpetua and about seven other pursuing officers followed the truck, accompanied by a red Torino, as it made its way through town and east on Expressway 83. Finally, both vehicles turned north onto Farm Road 907. At that point both vehicles were lost from sight for about five minutes. A few hundred yards from the point where the vehicles were last seen Officer Perpetua turned off 907 into an orange grove. About 50–75 yards off the road his headlights picked up the PeMex truck and a number of people who immediately scattered. Also in the area was a small house about 20 feet off 907, a shed behind the house, and several parked cars, including the red Torino.

Perpetua backed out of the orchard and was joined by the other officers who had spread out looking for the truck. Officer Harrison entered the grove almost immediately and spotted Hernandez, fully dressed, about 5 or 10 yards from the truck. Hernandez started walking, then running, into the grove. He was ordered to stop and was arrested.

In searching for the people who had left the scene, Officers Harrison and Ramirez entered the shed. Lights were on inside, the windows closed and the door open; marijuana debris and a weighing scale could be seen inside the shed from the door. Inside the officers found two bricks of marijuana in a sack.

Another officer, checking inside the tanker, found a large quantity of marijuana. Inside the Torino were two sets of clothing—lacking only the underwear. Officer Harrison concluded that the owners of the apparel had undressed in order to enter the storage compartment of the tanker and unload the marijuana.

Harrison and Ramirez then approached the house, in which a light was on, and knocked on the door. Defendant Salinas answered, dressed only in a T-shirt and undershorts. Ramirez asked why he had not opened the door right away and Salinas said that he had been sleeping. Ramirez testified that Salinas did not appear as if he had been sleeping but seemed excited and was breathing heavily. Ramirez put his hand on Salinas's chest and said his heart was pounding fast. Asked if he knew why the officers were there, Salinas at first replied no, then said "maybe marijuana". He was placed under arrest and advised of his rights. When asked why the truck was in the field, Salinas said, "Probably marijuana. That's what you would look for."

No one else was apprehended.

## II. *Standard of Review*

■ While the evidence must be viewed in the light most favorable to the government, complete judicial abdication to the trier of fact is not required. *United States v. Peterson*, 5 Cir. 1974, 488 F.2d 645, 649, *cert. denied*, 419 U.S. 828, 95 S.Ct. 49, 42 L.Ed.2d 53. *Glasser, supra*, explicitly requires that a conviction must be supported by "substantial evidence". 315 U.S. at 80, 62 S.Ct. 457.

■ The test to determine whether the evidence is sufficient to sustain a verdict has been set forth recently by this Court in *United States v. Barrera*, 5 Cir. 1977, 547 F.2d 1250. In a criminal case the government must prove every element of the offense beyond a reasonable doubt. *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954). Each element may be proved by either direct or circumstantial evidence; the test for sufficiency is the same. *United States v. Gomez-Rojas*, 5 Cir.

1975, 507 F.2d 1213, 1221, *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42. In determining the sufficiency of the evidence the test is whether the trial judge could reasonably find that the evidence excluded every reasonable hypothesis except guilt. *Hall v. United States,* 5 Cir. 1960, 286 F.2d 676, 679, *cert. denied,* 366 U.S. 910, 81 S.Ct. 1087, 6 L.Ed.2d 236; *De Luna v. United States,* 5 Cir. 1955, 228 F.2d 114, 116.

### III. *Sufficiency of the Evidence*

#### A. *Conspiracy*

 The essential elements of a criminal conspiracy are an agreement among the conspirators to commit an offense against the United States and an overt act by one of them in furtherance of the agreement. *United States v. Isaacs,* 5 Cir. 1975, 516 F.2d 409, *cert. den.,* 423 U.S. 936, 96 S.Ct. 295, 46 L.Ed.2d 269. The government must prove beyond a reasonable doubt that a conspiracy existed, that the accused knew of it, and with that knowledge intentionally did something to further or carry on that conspiracy. *Causey v. United States,* 5 Cir. 1965, 352 F.2d 203.

 Quite obviously there was a conspiracy and conspirators, never identified, were observed at the scene. The problem is whether there was adequate proof to connect *this defendant* with the conspiracy. Mere presence at the scene of a crime is insufficient to establish participation. *United States v. Falcone,* 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940); *United States v. Owen,* 5 Cir. 1974, 492 F.2d 1100, *cert. den.,* 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180.

 Both conspiracy counts are dependent on one overt act, alleged to be a meeting between this appellant and Hernandez in the orange grove at 2:00 a. m. the night of July 6, 1976. However, there was no evidence that the two had met, talked, or seen each other that night, or even knew of each other's presence. There was no proof of prior association. Except for the fact that Salinas was on the premises that night, there is no evidence that he talked to any of the conspirators or communicated with them in any manner.

Salinas was not seen near the International Bridge nor was he identified as being the driver of either the truck or the Torino. He was not seen anywhere outside of the house.

The government makes much of the fact that Salinas appeared at the door in his underwear. This is entirely consistent with his explanation that he had been sleeping. Also his excitement and pounding heart could easily be explained by being awakened at 2:00 a. m. by eight customs officers knocking on his door and searching the premises.

The government's case was based on unsupported inferences resulting from a large number of people being seen together, with a large amount of marijuana. This was not enough to warrant the inference that Salinas either knew of the conspiracy or knowingly participated in it.

#### B. *Possession*

 There is no evidence of actual possession in the record. However, constructive possession, if shown, will support a conviction. *United States v. Ferg,* 5 Cir. 1974, 504 F.2d 914. Constructive possession may be shown by ownership, dominion or control over the contraband itself, or dominion or control over the premises or the vehicle in which the contraband was concealed. *United States v. Martin,* 5 Cir. 1974, 483 F.2d 974; *Garza v. United States,* 5 Cir. 1967, 385 F.2d 899; *Smith v. United States,* 5 Cir. 1967, 385 F.2d 34.

 However, the government also failed to prove constructive possession. There was no proof that Salinas was aware of the presence of marijuana in the truck. His statement that the officers were probably there for marijuana was logical considering the officers were in uniform, were armed, and were commonly utilized in that area to enforce the marijuana laws.

There was no proof that Salinas owned or had control over the premises, the truck, or any of the cars parked at the scene. No

**474**

contraband was found in the house. Salinas was not seen running from the truck to the house and there was no proof that he had handled the contraband at any time.

We are driven to the conclusion that the government failed to prove either conspiracy or possession directly or circumstantially. Since the defendant did not move for a new trial, we reverse and remand with instructions to vacate the judgment of conviction and to enter a judgment of acquittal with respect to all three counts. *United States v. Horton*, 5 Cir. 1973, 488 F.2d 374, *cert. den.*, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772.

REVERSED and REMANDED WITH INSTRUCTIONS.