UNITED STATES of America, Plaintiff-Appellee,

v.

Eugene LITTRELL and Marc Davi, Defendants-Appellants.

No. 77–5294.

United States Court of Appeals, Fifth Circuit.

June 7, 1978.

Alan E. Weinstein, Miami Beach, Fla., for Littrell.

Melvyn Kessler, Miami, Fla., for Davi.

Jack V. Eskenazi, U. S. Atty., James E. McDonald, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before WISDOM, THORNBERRY and RUBIN, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellants Eugene Littrell and Marc Davi were indicted, along with three others, for possession of cocaine with intent to distribute, distribution of cocaine, and conspiracy. 21 U.S.C. §§ 841(a)(1) & 846. Davi was also charged with using a communications facility in the commission of a drug-related felony. 21 U.S.C. § 843(b). Both were convicted by a jury on all counts with which they had been charged.[1]

Littrell was sentenced to 18 months incarceration and a three-year special parole term, but all except six months of that sentence was suspended and a two-year probation was imposed. He received six-month prison terms for the other two counts, to run concurrently with the first six-month sentence, plus a three-year special parole term. Davi received two-year prison sentences for each of the four counts of which he was convicted, the sentences to run concurrently, and concurrent three-year special parole terms.

On appeal, both appellants contend there was insufficient evidence to support their convictions. Littrell also argues that the prosecutor improperly commented on his failure to testify on his own behalf and that the government's failure to produce, in timely fashion, material under the Jencks Act, 18 U.S.C. § 3500, deprived him of a fair trial. Davi claims that the district court erred in failing to advise the jury of the quantum of independent evidence necessary for admission into evidence of extra-judicial statements of co-conspirators and in denying his request for submission of special interrogatories to the jury. For the reasons stated below, we affirm as to Davi but reverse as to Littrell and remand his case for a new trial.

On October 4, 1976, special agent John Mantyla of the Drug Enforcement Administration, working undercover, taped a telephone conversation he had with one Vinny Kuhnen, who was indicted with Littrell and Davi but tried separately. Mantyla informed Kuhnen that he had buyers for two pounds of cocaine. Kuhnen responded that his initial source was no longer doing business but that he had a second source available. Mantyla called Kuhnen the next day and was told that "Marc" could handle the transaction. Kuhnen also provided Marc's phone number, and Mantyla phoned him on the same day and again on the following day, recording both conversations.

At about 2:30 p. m. on October 6, Mantyla and another DEA agent went to Kuhnen's hair styling shop, where they were introduced to Marc Davi. Handing Mantyla a "sample" of the cocaine he could provide, Davi explained that he was unable to obtain a kilogram as he had promised over the phone and that the best he could do was one pound—at a price of $17,000 plus an ounce of the cocaine for himself. Mantyla expressed dissatisfaction with the lesser quantity and stepped outside with the other agent to their automobile, where they field tested the substance as cocaine. Mantyla returned to the shop and complained to Davi that the cocaine was of poor quality, Davi revised his price to $15,000, and Mantyla agreed.

---

1. The other alleged co-conspirators were tried separately from Littrell and Davi and are not involved in this appeal.

Davi asked to see money, and Mantyla took him to the car and produced a "flash roll"[2] of $32,000. Apparently satisfied, Davi returned to the shop and placed a phone call. Mantyla testified that he heard Davi say "in essence" that "everything is all right. Go ahead and bring it. You know where you're coming." At about 3:25 p. m. Davi said, "All right. The man is here." The two agents saw Littrell drive to the shop and park. He got out of the car, spoke briefly to Davi, and then entered a bar next door. Davi then approached the passenger side of the car, reached into the glove box, and removed a white paper sack that he indicated contained the cocaine. Mantyla then field tested the cocaine inside the shop and again voiced disapproval at its quality. Kuhnen assured him that Davi could be trusted, since he had previously furnished cocaine to the "shop." After getting a positive reaction in the test for cocaine, Mantyla went outside under the pretense of getting the money from his car and signalled to other agents to effect the arrests. Davi and Kuhnen were arrested in the shop, and Littrell was arrested in the bar.

Having unsuccessfully moved for a judgment of acquittal in the district court, Littrell and Davi now urge that the evidence summarized above was insufficient to support their convictions. They challenge their conspiracy convictions as well as their convictions for the substantive offenses. We will treat each appellant's arguments separately.

■ As for the substantive drug counts, Davi contends only that the jury was never instructed or even shown proof that cocaine is a Schedule II controlled substance. This argument is specious, for the district judge told the jury several times that the case involved cocaine, "a Schedule II narcotic controlled substance," and there is no doubt that cocaine is so classified. 21 U.S.C. § 812. Davi also argues that his conviction for using a communications device must fall if his convictions for distribution, possession, and conspiracy are struck down. The evidence makes crystal clear that Davi was caught red-handed in the midst of a drug deal. Thus, the convictions for possession and distribution are clearly supported by the evidence, and these convictions are sufficient to support the conviction for using a communications device in connection with a drug-related felony. Accordingly, we affirm Davi's convictions for the substantive offenses.

■ Davi attacks his conspiracy conviction on several grounds, arguing that the evidence does not prove the existence of a conspiracy, that there is no evidence of his intent, and that the government failed to establish a "wheel" conspiracy. The last contention can be quickly disposed of, for the record makes clear that the government did not prosecute this case on a "wheel" theory. Compare United States v. Baldarrama, 566 F.2d 560 (5 Cir. 1978), and United States v. Levine, 546 F.2d 658 (5 Cir. 1977).

■ We have little doubt that the evidence is sufficient to establish a conspiracy between Davi and Kuhnen, the latter having served as a "go-between" in the transaction between Davi and the DEA agent. Moreover, Kuhnen explained to Mantyla that Davi was his "second source" for cocaine and later indicated that Davi had supplied quality cocaine in the past. Kuhnen's comments also suggest that his hairstyling shop had been the setting for other drug "deals." See United States v. Ochoa, 564 F.2d 1155 (5 Cir. 1977); United States v. Thomas, 567 F.2d 638 (5 Cir. 1978). However, because evidence of Davi's guilt of the substantive offenses was so overwhelming and because he received concurrent sentences on the substantive and conspiracy counts, we apply the concurrent sentence doctrine and elect not to reach the merits of his sufficiency of the evidence argument as to the conspiracy conviction. See United States v. Ashley, 569 F.2d 975, 984 (5 Cir. 1978), and cases cited therein.

2. A "flash roll" is money utilized by undercover narcotics agents to demonstrate to potential drug sellers that they are ready, willing, and able to purchase the drugs.

■ Littrell's case raises considerably more difficult questions, for the evidence against him can best be described as scant. Considering first the conspiracy conviction, our inquiry is whether the jury could reasonably, logically, and legally infer from the evidence presented that Littrell was guilty beyond a reasonable doubt. *United States v. White,* 569 F.2d 263 (5 Cir. 1978); *United States v. Smith,* 546 F.2d 1275 (5 Cir. 1977). Put another way, could the jury reasonably find that the evidence was inconsistent with every hypothesis of innocence? *United States v. Prout,* 526 F.2d 380 (5 Cir. 1976); *United States v. Moore,* 505 F.2d 620 (5 Cir. 1974); *United States v. Warner,* 441 F.2d 821 (5 Cir.), *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971).[3]

■ Essential to the government's case is proof beyond a reasonable doubt, by either direct or circumstantial evidence, that a conspiracy existed, that the accused knew it, and, with that knowledge, voluntarily joined it. *United States v. White, supra; United States v. Caro,* 569 F.2d 411 (5 Cir. 1978); *United States v. Gutierrez,* 559 F.2d 1278 (5 Cir. 1977). In drug conspiracy cases brought under 21 U.S.C. §§ 846 & 963, no overt act in furtherance of the conspiracy need be proven, *United States v. Thomas, supra; United States v. Palacios,* 556 F.2d 1359 (5 Cir. 1977). Our focus here is whether the evidence demonstrates Littrell's "knowing participation" in the conspiracy.

■ The evidence against Littrell, viewed in a light most favorable to the government pursuant to *Glasser v. U. S.,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), can be summarized as follows: (1) After satisfying himself that Mantyla was sincere about purchasing cocaine, Davi placed a phone call and told an unidentified party to "go ahead and bring it"; (2) Littrell drove to Kuhnen's hairstyling shop and parked, at which time Davi told the agents

that "the man is here"; (3) Littrell got out of the car, had a fleeting conversation with Davi outside of the shop, and went into a nearby bar.

The government would have this court—and the jury—draw the following inferences from this evidence: (1) Davi's phone call had been to Littrell; (2) Littrell placed the cocaine in the car before driving to the shop [or, alternatively, that he knew the cocaine was already in the vehicle]; (3) Littrell's brief conversation with Davi was drug-related, *i. e.,* Littrell told him the cocaine was in the glove box; and (4) Littrell, who was Davi's supplier, went into the bar to avoid being present at the time of the actual transaction.

These inferences are certainly plausible and perhaps even probable, but it is not enough for the government to prove that Littrell *might* have been guilty. The government must prove guilt beyond a reasonable doubt, and to do so requires the exclusion of every reasonable hypothesis but that of guilt. We do not think that is the case here, for inferences of innocent activity can reasonably be drawn from Littrell's behavior.

The following inferences are certainly permissible from the evidence listed above: (1) Davi spoke to someone other than Littrell on the phone; (2) that a third person asked Littrell to deliver a car to the hairstyling shop; (3) Littrell's brief conversation with Davi was not drug-related; and (4) Littrell, having completed his mission of delivering the car, stopped at the bar for a cold drink. It is entirely possible that Littrell did not know that the cocaine was in the car. The government suggested at oral argument that such an interpretation is not reasonable because a drug "boss" would not entrust delivery of several thousand dollars worth of cocaine to someone who did not know of its presence or who did not know of the drug operation itself. This analysis

---

**3.** The differences in the two tests are merely semantical. *United States v. White, supra* at 266 n. 1; *United States v. Smith, supra* at 1284 n. 3. A third formulation is whether the jury "could not reasonably conclude that the evidence fails to exclude every reasonable hypothesis but that of guilt." *United States v. Caro,* 569 F.2d 411 (5 Cir. 1978); *United States v. Haggins,* 545 F.2d 1009 (5 Cir. 1977).

has two critical flaws. First, drug bosses come in all shapes and sizes and come from all walks of life. Here, that boss may have been a respected businessman who dealt in cocaine "on the side." For all we know, Littrell could have been one of his "legitimate" employees, and the "boss" would have every reason to trust him. Second, we can hardly presume that Littrell knew of the drug operation; indeed, it might be an asset for such a courier to be uninformed about the nature of his delivery, since he would have no reason to be nervous or apprehensive about a task he believed to be perfectly legitimate.[4] Thus, Littrell may simply have been an unknowing "runner" in the delivery process.[5]

 This court has held many times that association with other persons involved in a criminal enterprise is not sufficient to prove knowing participation in a conspiracy. As we said in *United States v. Caro, supra* at 418 (5 Cir. 1978), "[p]roximity to the crime does not suffice to tip the balance," and even "actual presence at the scene of the crime is not sufficient." *See also United States v. Gutierrez, supra* at 1280–81; *United States v. Barrera,* 547 F.2d 1250, 1256 (5 Cir. 1977); *United States v. Martinez,* 486 F.2d 15, 24 (5 Cir. 1973); *Panci v. United States,* 256 F.2d 308, 312 (5 Cir. 1958). We have little more than such mere presence or association in the instant case. There is no evidence that Littrell owned the car in which the cocaine was transported, no evidence that Davi had spoken to Littrell on the telephone prior to the delivery, no evidence that Littrell knew of the cocaine in the car or of the overall deal that was "going down." Although it is certainly possible—maybe even probable—that Littrell was involved in the conspiracy, such speculation does not constitute proof beyond a

reasonable doubt, and juries "must not be permitted to convict on suspicion and innuendo." *United States v. Palacios, supra* at 1365.

Examination of other cases buttresses our conclusion that the evidence against Littrell is insufficient to support his conspiracy conviction. In *United States v. Martinez, supra,* co-defendant Padilla-Soris drove defendant Martinez to a dock, where Martinez was to pick up some marijuana that had been smuggled from a ship. Padilla-Soris dropped off Martinez and then left the scene, but was stopped by a customs agent. Although recognizing the definite possibility of Padilla-Soris' involvement in the conspiracy, the court found the evidence insufficient. The case is distinguishable from the case at bar in that no drugs were found in the car, but the court emphasized that the government was "unable in this case to show that Padilla ever knew or met Martinez or [another conspirator] prior to the trip to the docks, or that he agreed with them or either of them to import marijuana into the United States." 486 F.2d at 24. Similar problems exist in the instant case, for there is no evidence of a prior relationship between Littrell and either Davi or Kuhnen, and the only evidence of his knowledge of the conspiracy comes from inference built upon inference.

*United States v. Gutierrez, supra,* also involved a drug conspiracy. The evidence established that Gutierrez's nephew, Gonzales, had made four heroin sales to an undercover DEA agent. Other agents, attempting to locate Gonzales' source, observed him entering Gutierrez's home after arranging a sale with the undercover agent but before consummating the transaction. A search of Gutierrez's home revealed $400

---

4. Moreover, if we assume that Littrell was *not* one of the boss's most trusted underlings, it is possible that the boss did not tell him about the cocaine for fear that he would abscond with the goods rather than make the delivery.

5. Other interpretations of the evidence are also reasonable. Assume, for example, that Davi in fact phoned Littrell. Given the sketchy evidence before us, it does not seem unreasonable

to infer that Davi called Littrell and asked him to bring Davi's car to the hairstyling shop. According to Agent Mantyla, Davi said to bring "it" to the shop—"it" does not necessarily mean cocaine, but could refer to Davi's car. There is no evidence that the car belonged to Littrell, and it is indeed possible that Littrell delivered the car without knowing of the cocaine in the glove box.

in marked bills that the agent had used to pay Gonzales for the heroin. The court found these facts insufficient to warrant the inference that Gutierrez "knew of the conspiracy, much less the inference that [he] knowingly and willingly participated in it." *Id.* at 1281.

Similarly, the fact that cocaine was found in a car that Littrell had been driving does not establish that he knew of the conspiracy and willingly participated therein. Just as Gutierrez may not have been aware that his home was being used as a heroin distribution center, Littrell may not have known that the car contained cocaine and that he was delivering it to the scene of the transaction.

In *United States v. Oliva,* 497 F.2d 130 (5 Cir. 1974), Oliva allegedly conspired with one Maige to distribute cocaine. According to the admissible evidence, Oliva had been present when Maige asked several persons about the possible purchase of some cocaine, and telephone records indicated that calls had been made from Oliva's telephone to Maige's on the date that Maige sold undercover agents six ounces of cocaine. Prior to the sale, Oliva followed Maige into a parking lot adjacent to the latter's apartment and remained there, in his car, while Maige went inside and made the sale. Meanwhile, Oliva drove away but was soon apprehended by law enforcement officials.

The government's theory was that Oliva had procured the cocaine for Maige, but the court concluded that the evidence summarized above was inadequate to prove he had participated in the alleged conspiracy. This evidence against Oliva seems stronger than the evidence against Littrell, for his connection with the seller (Maige) is much more clear than Littrell's connection with Davi.

*United States v. Caro, supra,* involved an alleged heroin conspiracy in which Caro was the source. Undercover agents arrested one Casillas, an alleged conspirator, after he

had attempted to sell them five ounces of heroin. Documents in the car he was driving contained Caro's name and address, and a man matching Caro's description had previously been observed driving the automobile on one occasion and conversing with Casillas on another. After the arrest, the agents drove the car to Caro's house, where he was standing in the yard waving his arms and whistling. He then turned and ran into the house.

The court found this evidence insufficient to prove Caro's involvement in the conspiracy, *i. e.,* that Caro had supplied the heroin to Casillas. However, the court indicated that testimony from Casillas, who did not appear at trial, could possibly fill many of the holes in the government's case against Caro. Such holes exist in the instant case as well, for there is no evidence that Littrell was the source of the cocaine, and no connection is shown between him and Davi, other than a conversation of some 15 seconds when Littrell delivered the car.

In sum, we conclude that the reed of inferences is simply too thin to support Littrell's conspiracy conviction. As the Supreme Court has warned, "charges of conspiracy are not to be made out by piling inference upon inference." *Ingram v. United States,* 360 U.S. 672, 680, 79 S.Ct. 1314, 1320, 3 L.Ed.2d 1503 (1959), *quoting Direct Sales Co. v. United States,* 319 U.S. 703, 711, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943). We cannot say that Littrell, though "something less than a majordomo" in this operation, was something more than an "unsuspecting pawn." *United States v. Miller,* 500 F.2d 751, 765 (5 Cir. 1974), *rev'd on other grounds,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). *See also United States v. White, supra* (conspiracy not to be inferred from marital relationship).[6]

 Littrell was also convicted of the substantive offenses of possession with intent to distribute and distribution. There is

---

**6.** We repeat here Judge Goldberg's statement in *United States v. Caro, supra* at 419–20, that this sufficiency of the evidence analysis does not create "an impossible task for the government in what are often difficult to prove cir-

cumstantial evidence cases" and that "examination of our recent decisions in conspiracy cases demonstrates that *adequately proved* convictions will be sustained." [emphasis supplied.]

no evidence of actual possession of the cocaine in the record, but constructive possession is sufficient to support a conviction. *United States v. Ferg,* 504 F.2d 914 (5 Cir. 1974). Constructive possession may be shown by ownership, dominion, or control over the contraband itself or over the vehicle in which the contraband was concealed. *United States v. Salinas-Salinas,* 555 F.2d 470 (5 Cir. 1977); *United States v. Martin,* 483 F.2d 974 (5 Cir. 1973); *Garza v. United States,* 385 F.2d 899 (5 Cir. 1967). However, there is no evidence that Littrell owned the car or that he was aware of the cocaine's presence in the glove compartment. Moreover, there is no proof that he handled the cocaine at any time. In these circumstances, the government has failed to prove constructive possession. *United States v. Salinas-Salinas, supra.* Moreover, nothing in the record indicates that Littrell had the requisite intent to possess the cocaine for distribution purposes. *See United States v. Longoria,* 569 F.2d 422 (5 Cir. 1978). Because, as a matter of simple logic, there can be no distribution if there is no possession with intent to distribute, Littrell's conviction for distribution must also fall.

Accordingly, we reverse Littrell's convictions on all three counts and remand the case for a new trial, since he made a motion for new trial in the district court. *United States v. Musquiz,* 445 F.2d 963 (5 Cir. 1971); *United States v. Damato,* 554 F.2d 1371 (5 Cir. 1977).

Our disposition of this case renders consideration of appellants' other points of error unnecessary. Because we reverse Littrell's convictions and remand for a new trial, we need not consider his claims of improper prosecutorial comment and untimely production of Jencks Act material. Similarly, our application of the concurrent sentence doctrine to Davi's conspiracy conviction obviates the necessity of reaching his contentions that the district court erroneously failed to properly instruct the jury regarding the extra-judicial statements of co-conspirators and denied his request for submission of special interrogatories to the jury. Both of these arguments go to the conspiracy conviction and do not affect the validity of the convictions for the substantive offenses.

Accordingly, appellant Davi's convictions are affirmed, appellant Littrell's convictions are reversed, and his case is remanded for a new trial.

AFFIRMED in part, REVERSED in part, and REMANDED.