UNITED STATES of America, Plaintiff-Appellee,

v.

Paul ROGERS, Michael Stuart Fichman, Raymond Francis Gustke, Defendants-Appellants.

No. 81–5369.

United States Court of Appeals, Eleventh Circuit.

March 9, 1983.

Mark King Leban, Miami, Fla., for Gustke.

Gerald Tobin, Miami, Fla., Robert I. Kalina, New York City, for Fichman.

Gargiulo & McMenimen, Richard A. Gargiulo, Brian J. McMenimen, Constance L. Rudnick, Boston, Mass., for Rogers.

Kenneth W. Lipman, Jon May, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT, KRAVITCH and HATCHETT, Circuit Judges.

TJOFLAT, Circuit Judge:

Appellants Rogers, Fichman, and Gustke were convicted in the district court of conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846 (1976). We affirm the conviction of each appellant.

## I.

All three appellants argue that the district court erred in denying their motion to dismiss the indictment because of government overreaching in violation of their due process rights. The arrests and convictions in this case arose out of the same Drug Enforcement Agency (DEA) operation upheld in *United States v. Savage,* 701 F.2d 863 (11th Cir.1983). Because the facts in this case do not differ substantially from those in *Savage,* we deny appellants' due process claim based on the reasoning expressed therein.[1]

---

1. We note that appellants make two assertions in this case not present in *Savage.* First, they point out that there was uncontradicted testimony that when they were wavering about buying the marijuana, the government, through its informant, lowered the price of the marijuana from $280 per pound to $275 per pound, offered to put them up in a hotel room, and offered to furnish them with women. Accepting the truth of this testimony, it still falls far short of the shocking and outrageous conduct necessary to amount to a due process violation.

## II.

At the close of the hearing on the motion to dismiss the indictment because of government overreaching, appellant Gustke and the government entered into a stipulation in which Gustke waived his right to a jury trial and stipulated that he drove a camper vehicle, with a separate cab compartment, loaded with marijuana from the DEA warehouse to the point of arrest about two blocks away. The government agreed that the testimony at the hearing of DEA Agent George Andrew Auflick would comprise the government's case-in-chief. Upon entering into the stipulation, Gustke moved to dismiss the indictment because the evidence against him was insufficient to sustain a verdict of guilt. The court denied the motion. Gustke appeals this ruling.

■ In reviewing a claim of insufficiency of the evidence, we must consider all of the evidence and draw all reasonable inferences in favor of the government. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). "The standard of review is whether a reasonably minded jury must necessarily entertain a reasonable doubt as to the [defendant's] guilt." *United States v. Gianni,* 678 F.2d 956, 959 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982). To convict Gustke of conspiracy to possess marijuana with intent to distribute, the government had to show that a conspiracy existed, that Gustke knew of the conspiracy, and that with that knowledge, he voluntarily joined in the conspiracy. *See United States v. Littrell,* 574 F.2d 828, 832 (5th Cir.1978). Because Gustke does not dispute that a conspiracy existed, we must focus on whether Gustke knowingly participated in the conspiracy. *See id.*

■ Agent Auflick's testimony implicated Gustke in the conspiracy as follows. Auflick testified that the night before Gustke and the other appellants were arrested, he received a call from Jerald Huegel, the government's confidential informant. Huegel told Auflick that he had that day gone with a coconspirator named Villoch to a meeting at the house of an unindicted coconspirator, Andrews, at which Gustke, Fichman, Rogers, Andrews, and another unindicted coconspirator, McKay, were present. Auflick testified that Huegel told him "that those persons were ready to purchase at that time and that he had to stall them and tell them that we didn't work at nighttime and that we would meet them at 10:00 in the morning [the next day], which I did." Record, vol. 2, at 54. From Auflick's testimony, it is clear that all those who Huegel had said were present at the meeting were present at or near the warehouse the next day, when the "sale" of marijuana and subsequent arrests occurred.

Auflick also testified that when the "sale" was ready to be consummated, he asked Rogers and Fichman, the two buyers, whether they had all of the money. Fichman replied that he did. Rogers replied that he had only half of his money but that he would send someone for the rest. At that point, Rogers told Andrews to go. Villoch gave Andrews his car keys and Andrews left in Villoch's car. Andrews re-

See *Savage, supra; United States v. Tobias,* 662 F.2d 381 (5th Cir. Unit B 1981) (discussed in *Savage*). The government merely sweetened the deal a little bit. It did not present the appellants with an opportunity so unique that they could not have encountered it elsewhere. *Cf. United States v. Batres-Santolino,* 521 F.Supp. 744 (N.D.Cal.1981) (discussed in *Savage*).

Appellants also point out that a DEA agent testified that some marijuana under the DEA's control may have left the DEA's warehouse in the form of samples given to brokers and prospective purchasers. Appellants argue it is intolerable that the government would allow marijuana out on the streets in violation of the law. It is apparent, however, that if the DEA's operation was to succeed, the agents had to conduct themselves as normal marijuana sellers so as not to arouse suspicion. Such conduct included distributing small samples of marijuana to potential buyers. This conduct is not even close to being outrageous and shocking. The appellants would have us believe that the government must forego confiscating huge amounts of illicit drug money and arresting numerous persons involved in illegal drug smuggling because on occasion it must provide a handful of marijuana as a sample to prospective buyers. We find this argument without logical support. Thus, we reject it.

turned about fifteen minutes later with Gustke, who had been following Andrews in a separate vehicle. Gustke got out of that vehicle and "came up to the door of the [office of the] warehouse with Mr. Andrews. Mr. Gustke had a paper bag in his hand. Mr. Rogers came up to the paper bag and told Mr. Gustke to go back out and wait in the car." Record, vol. 2, at 45. Rogers then took the paper bag and put it in the cab of the truck he and Fichman had driven to the warehouse. Record, vol. 3, at 142. Rogers then helped Andrews, Fichman, McKay, and Villoch load the marijuana onto the truck. Rogers then went to the cab of the truck, removed a few paper bags, and brought them into the office of the warehouse. Rogers and Fichman then started counting money out of the bags to pay Auflick and the "brokers" for the marijuana. In Agent Auflick's estimation, Rogers counted out about $130,000 from his stack of money.

In addition to Agent Auflick's testimony, Gustke stipulated to the following: "[A]fter the truck [loaded with 800 pounds of marijuana] exited the warehouse with the door open, the warehouse closed and the back door of the truck closed and the defendant Gustke got into the cab of the truck and drove it for about two blocks until he was arrested." Record, vol. 3, at 326. The truck was a camper vehicle with a separate cab compartment. Gustke sat in the cab compartment, separate from the marijuana stored in the rear of the truck.

We believe the district court was correct in concluding that a reasonably minded jury could have found beyond a reasonable doubt that Gustke was a knowing, voluntary participant in the conspiracy. One could reasonably infer that the bag Gustke brought to the warehouse contained a large amount of money, probably about $60,000. One could also reasonably infer that Rogers would not have trusted someone who did not know about the marijuana scheme to deliver $60,000 in a paper bag to a warehouse loaded with marijuana and then drive a truck loaded with 800 pounds of marijuana away from the warehouse. These two inferences, coupled with the evidence described above, including Huegel's statements to Auflick about the meeting the night before—which were completely corroborated by the presence at the warehouse the next day of all those who Huegel said were at the meeting—[2] lead to the almost inescapable conclusion that Gustke was a knowing participant in the conspiracy. Regardless whether Gustke ever actually saw the money in the bag or the marijuana in the warehouse or in the truck, it seems to us that it would be unreasonable to conclude that one as heavily involved in the conspiracy as the evidence shows Gustke was did not know the purpose of the conspiracy.[3] We conclude that a reasonable

**2.** We are fully cognizant that Auflick's testimony about the meeting the night before involved the out-of-court statements of the informant Huegel. We need not determine whether a hearsay objection should have been sustained because none was forthcoming; thus, the evidence was admitted. We have considered the out-of-court nature of Huegel's statements, however, in judging their probity. As noted in the text, Huegel's statements were completely corroborated by the events transpiring the next day. Thus, the possibility that Huegel made up the story about the meeting is extremely low. We believe a reasonable jury could have given substantial weight to Huegel's statements. Therefore, we see no problem in considering them.

**3.** We have carefully examined the cases in this circuit factually similar to the one at bar, including all those Gustke has cited to us. While some may be similar, each case turns on its own facts, and we have found no case inconsistent with our holding today. For example, in *United States v. Littrell*, 574 F.2d 828 (5th Cir.1978), possibly the closest case to the one at bar, the evidence showed (1) that a phone call was made from a cocaine seller to an unidentified person in which the seller said "go ahead and bring it"; (2) the defendant drove up to the seller's hairstyling shop in a car and parked, at which time the seller said "the man is here"; (3) the defendant got out of the car, had a short conversation with the seller, and went into a nearby bar; (4) the seller then went to the passenger side of the car and removed from the glove box a white paper sack containing cocaine.

In contrast to the case at bar, in *Littrell* a reasonable jury necessarily had to entertain a reasonable doubt whether the defendant was a knowing participant in the conspiracy. The defendant's only involvement in the conspiracy

trier of fact would not necessarily have entertained a reasonable doubt whether Gustke was guilty. Thus, we affirm the trial court's denial of Gustke's motion to dismiss.

AFFIRMED.

was in driving a car in which cocaine was present in the glove box. This evidence was not enough to negate the reasonable, innocent explanation for the defendant's conduct that he was an unknowing messenger boy. In the case at bar, Gustke carried a paper bag filled with a large amount of money up to the office door of a warehouse loaded with marijuana, then wait-ed outside to drive, and did drive, a truck loaded with marijuana, and was allegedly present at a meeting the night before in which the marijuana deal was discussed. We believe this evidence excludes every reasonable, innocent explanation for the defendant's conduct. In *Littrell* the evidence did not negate all such explanations.