**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Cesar Augusto CORREA–ARROYAVE,**
**Defendant-Appellant.**

**No. 82–5737.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 23, 1983.

Rehearing Denied Jan. 26, 1984.

Rehearing and Rehearing En Banc
Denied March 2, 1984.

Douglas L. Williams, Martin Nathan, Miami, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Neil Taylor, Robert Dunlap, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before FAY and HATCHETT, Circuit Judges, and ATKINS *, District Judge.

ATKINS, District Judge:

Cesar Augusto Correa-Arroyave (Correa) was convicted of three counts charging (a) conspiracy to possess and distribute, (b) unlawful possession, and (c) distribution of cocaine. Counts II and III also charged violations of 18 U.S.C. § 2. Correa raises issues dealing with out-of-court statements of a co-conspirator, prosecutorial misconduct during opening statement and closing argument and the sufficiency of the evidence. Finding no error in the trial proceedings and that the evidence supports the convictions, we affirm.

## I

### The Facts

A series of meetings and telephone conversations beginning on February 5th were held among Special Agents Paul Sennette and Barry Carew, posing as narcotics dealers, and a cooperating individual, Bertram Mark Schwartz. After an abortive plan to sell nine kilograms of cocaine at a price of $57,000 per kilogram at Westland Mall on February 10 (T 53), the transaction was rescheduled for February 11. (T 60)

On February 11, at 10:30 in the morning, Sennette and Special Agent Carol Cooper returned to the Westland Mall in a Mercedes-Benz automobile. (T 61, 146) Carew followed, driving a yellow Cadillac Eldorado. (T 61, 143, 146) Sennette and Cooper had with them a half million dollars in cash. (T 61)

After parking the Mercedes near the entrance to Burdines, Sennette left the Mercedes and walked over to a Bronco vehicle parked five to ten feet away. (T 62, 67) Inside the Bronco was John Palmer and another individual in the passenger seat. Sennette had met Palmer the day before through Schwartz. (T 57) Palmer introduced Sennette to an individual, identified as Francisco Restrepo. (T 62)

Palmer requested to see the money, and was taken to the Mercedes where Cooper showed him the half million dollars. (T 63, 66–67) Palmer got out of the Mercedes and told Restrepo to get the cocaine. (T 67). Carew, who was at this point walking with Schwartz towards the Mercedes, threw Restrepo the keys to the yellow Cadillac. Restrepo got into the Cadillac and drove out of the parking area. (T 67–68)

Carew followed Schwartz into the shopping mall. He was introduced to two Latin individuals, who later became known to him as Juan Rosano Crump-Perez and Julio Cesar Zuniga. (T 148) Carew engaged Zuniga in a conversation in Spanish and spoke to Crump about the prospects of future cocaine transactions. (T 150–51).

At approximately 11:00 a.m. Restrepo returned to the parking area, walked over to the Mercedes and asked Sennette to go to the apartment with him. (T 69) Sennette told Restrepo to get the cocaine. (T 69) Restrepo asked Palmer if he had seen the money. Palmer replied that he had and directed Restrepo to get the cocaine. (T 69) Restrepo got back into the Cadillac and drove out of the parking area. (T 69)

At approximately 12:00 noon the Cadillac, driven by Restrepo, entered the parking lot at the far west end of the Westland Mall. (T 71) Shortly thereafter Restrepo walked over to the Mercedes and asked to see the half million dollars. (T 71) Restrepo got into the Mercedes and was shown the money. (T 71) At that point, Restrepo stated that the cocaine was here and that Carew

---

* Honorable C. Clyde Atkins, U.S. District Court Judge for the Southern District of Florida, sitting by designation.

should go get it. (T 72) Palmer gave Carew the car keys and drove him to the Cadillac which was parked approximately one hundred yards from the Mercedes and the Bronco. (T 155–56)

When the car which Palmer was driving arrived near the Cadillac, Carew got out of Palmer's car and "walked directly to the Cadillac." (T 156) As he approached the car he saw Correa "leaning up against the driver's door of the Cadillac." (T 156) Carew asked Correa if the cocaine was ". . . in the front or in the trunk." The appellant replied ". . . it's in the trunk." (T 156)

Carew, accompanied by Correa, then walked to the rear of the Cadillac and opened the trunk. (T 157) Correa looked around for a minute or two. Carew told Correa that it made no difference to him whether he stayed or left. Correa asked about the whereabouts of Restrepo and was told by Carew that Restrepo was near the entrance to the mall. At this point, Correa turned and started walking slowly towards the direction of Sennette's and Palmer's cars. (T 157–58)

Carew stayed behind at the trunk of the Cadillac where he field-tested the cocaine. (T 158) He then drove the Cadillac up towards the mall. Along the way, he passed Correa and offered to give him a ride to the front of the mall. Correa refused. (T 158).

Correa, Palmer, Schwartz, Restrepo, Crump and Zuniga were arrested shortly thereafter at the Westland Mall by the Special Agents of the Drug Enforcement Administration. (T 73–74) The cocaine seized from the trunk of the Cadillac totaled approximately twenty pounds and was ninety-one percent pure. (T 201, 204)

## II

*Admission of Co-Conspirators' Statements*

■ Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not excludable as hearsay if offered against a party and made "by a co-conspirator of a party during the course and in furtherance of the conspiracy." Before admitting such statements, however, an initial determination must be made by the trial judge that there is "substantial independent evidence of a conspiracy . . . ." *United States v. James,* 590 F.2d 575, 581 (5th Cir.1979) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1972).

Correa claims that the district court improperly admitted co-conspirator statements without satisfying the standards required for the admission of this kind of evidence. The record shows that the court announced acceptance of a "proffer" (T 40) and at the conclusion of the government's case made a finding that the requirements of *United States v. James,* 590 F.2d 575 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1972) had been satisfied. (T 287) A pretrial *James* hearing is not mandated. *United States v. Miller,* 664 F.2d 826 (11th Cir.1981). *See also United States v. Ocanas,* 628 F.2d 353, 359–60 (5th Cir.1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981); *United States v. Grassi,* 616 F.2d 1295, 1300 (5th Cir.1980), *cert. denied,* 449 U.S. 956, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980).

The facts recounted above remove any serious dispute that a conspiracy existed. The trial court found and the record supports that there was substantial independent evidence that Correa was a member of that conspiracy. To reiterate, under the plan conceived by Sennette and Schwartz, the cocaine was to be delivered to the Westland Mall in the yellow Cadillac. As Carew approached the yellow Cadillac, he observed the appellant leaning up against the driver's door of the Cadillac. Carew asked the appellant whether the cocaine was ". . . in the front or in the trunk." To which the appellant replied that ". . . it's in the trunk." (T 156) Correa briefly accompanied Carew to the rear of the Cadillac and then asked about the whereabouts of Restrepo. After being told that Restrepo was near the entrance to the Mall, Correa walked in that direction. (T 157–58)

Correa urges that since he was standing near the car and there was no cocaine visible in the passenger compartment as none

was "in there", the comment that the cocaine was "in the trunk" was not particularly suggestive of anything. (Appellant's Brief at 30) We disagree. The statement was a direct response to Carew's question and it furthered the goal of the conspiracy, *i.e.*, the distribution of cocaine. As such, it was clearly admissible under *Fed.R.Evid.* 801(d)(2)(A). *United States v. Roe,* 670 F.2d 956 (11th Cir.1982).

The situation obtained herein is not unlike that of the defendant Velazquez in *United States v. Mesa,* 660 F.2d 1070 (5th Cir.1981). The only evidence against Velazquez consisted of his arrest inside a camper which was being loaded with bales of marijuana during the course of a late night off-loading operation. The Court in *Mesa* held that "[p]roof of such a compromising position makes any hypothesis of innocence unreasonable . . . ." 660 F.2d at 1074. The *Mesa* Court found that the district court was correct in admitting co-conspirators' statements against Velazquez. *Id.*

Correa was the only co-conspirator at the location of the cocaine prior to its distribution to the undercover agents. He alone informed Carew as to the precise location of the cocaine. Correa then sought to rejoin his co-conspirators, who, according to plan, were in the process of receiving the half million dollars in exchange for the cocaine. This evidence makes any hypothesis of Correa's innocence unreasonable. *See Id.*

▮ The District Court's assessment of the *James* issue is a finding of fact which will be overturned only if it is clearly erroneous. *United States v. Roper,* 681 F.2d 1354, 1359–60 (11th Cir.1982). The finding by the Court that there was substantial independent evidence of a conspiracy is clearly supported by the record. We therefore find that Correa's contention is without merit. The trial Court properly admitted the statements of the co-conspirators.

### III

### *The Prosecutor's Comments*

▮ Correa contends that the prosecutor's comments in opening statement, referring to the appellant as "a big-time, high stakes, narcotics dealer here in Dade County," were inappropriate suggestions of enhanced and prior criminality. (Appellant's Brief at 39) As the trial judge noted, however, the characterization was really nothing more than a statement based on the evidence to be presented at trial. (T 31)

THE COURT: It seems to me I find that statement certainly prejudicial. Most statements you have about defendants, if you characterized them at all, are somewhat prejudicial. It seems to me the mere size of the cocaine, the amount involved here, would indicate a rather large involvement on a rather large scale by anybody involved.

And I don't know that it was not a comment that isn't subject to proof as the tale will unfold. I don't know whether it will appear or not.

\*     \*     \*     \*     \*     \*

THE COURT: The size and amount of cocaine in this transaction we are talking about 20 pounds that the government found. It seems to me to be a large amount.

(T 31). We agree with the trial court's assessment and find that the prosecutor's comments were merely a characterization of the evidence to be adduced at trial, subject, of course, to the jury's evaluation of the accuracy of the characterization, *United States v. Capo,* 693 F.2d 1330, 1335 (11th Cir.1982); *United States v. Webb,* 463 F.2d 1324, 1328 (5th Cir.), *cert. denied,* 409 U.S. 986, 93 S.Ct. 338, 34 L.Ed.2d 251 (1972). We therefore find no prosecutorial misconduct or other error at this stage of the trial.

Correa also urges that "the felony was compounded" in the rebuttal argument when the prosecutor made comments concerning the co-defendant Crump. It was, however, Correa's counsel who on cross-examination of Carew made an issue about Crump's testimony had he been called as a witness and in final argument speculated as to why Crump had not been called.

The prosecutor responded to those issues in his rebuttal by stating:

Now, ladies and gentlemen, its been suggested to you that if the defendant is guilty of the crime with which he is accused, why hasn't the government called Johnny Crump to come in and testify? First of all, the government is under no obligation to call anybody proving its case. We have to prove the case to the satisfaction of the jury beyond a reasonable doubt. But had we called Johnny Crump, don't you think this man would make the same argument, he would stand up there and yell how could you believe what the testimony of a convicted individual would tell you.

The prosecutor's statements were made in reply to defense arguments, and were, in totality, not unfairly prejudicial to Correa. We find appellant's contention to be without merit. *United States v. Ivey,* 550 F.2d 243, 244 (5th Cir.), *cert. denied,* 435 U.S. 971, 98 S.Ct. 1613, 56 L.Ed.2d 63 (1977); *United States v. Henley,* 502 F.2d 585, 585–86 (5th Cir.1974).

## IV

### *The Sufficiency of the Evidence*

Correa challenges the sufficiency of the evidence to support his convictions. The government responds that "Correa's participation, although seemingly minor, was substantial to the extent that it effectuated the objective of the conspiracy, i.e., the distribution of the cocaine." (Appellee's Brief, pp. 10–11)

This Court must determine whether, viewing the evidence in the light most favorable to the government, a reasonable trier of fact could find guilt beyond a reasonable doubt. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982), *aff'd,* —— U.S. ——, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). The test is identical whether the evidence is direct or circumstantial, and no distinction is to be made between the weight given to either direct or circumstantial evidence.

*Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Warner,* 441 F.2d 821 (5th Cir.) *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971). The jury is free to choose among reasonable constructions of the evidence, 678 F.2d at 549.

The evidence at trial established the appellant's participation in a scheme to distribute twenty pounds of cocaine. On February 10, 1981, Sennette met with Schwartz and outlined a plan to purchase nine kilograms of cocaine. According to the plan the transaction was to take place at the Westland Mall parking lot. Sennette was to arrive and show Schwartz a half million dollars. Carew would then give Schwartz's people the keys to the car which would be used to retrieve the cocaine. When the car returned to the parking lot, Carew was to inspect the cocaine and inform Sennette of its quality. If the cocaine tested favorably, Sennette was to give the money to Schwartz or to his people. (T 55–56).

On February 11, the transaction took place as planned. The appellant remained with the Cadillac and told Carew where the cocaine could be found. Having effectuated the distribution, the appellant sought to join Restrepo and the other co-conspirators who were about to receive payment for the distribution of the cocaine.

The evidence sufficiently proved the elements of the charges and the appellant's participation in acts in furtherance of the conspiracy. As stated in *United States v. Gianni,* 678 F.2d 956, 958–59 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982):

the essential elements of a conspiracy can be proven by inference from the actions of the actors or by circumstantial evidence (citations omitted). There is rarely any direct evidence of an agreement to join a criminal conspiracy, so that a defendant's assent can be inferred from acts furthering the conspiracy's purpose (citations omitted).

We agree with appellant that mere association with conspirators is insufficient to establish participation in a conspiracy. *Unit-*

ed States v. Fitzharris, 633 F.2d 416, 423 (5th Cir.1980), cert. denied, 451 U.S. 988, 101 S.Ct. 2325, 68 L.Ed.2d 847 (1981). Participation in a criminal conspiracy, however, may be inferred from a "development and a collection of circumstances." *United States v. Malatesta,* 590 F.2d 1379, 1381 (5th Cir.), quoting *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). A person may be found guilty of conspiracy even though he plays only a minor role in the total scheme. *United States v. Lee,* 695 F.2d 515 (11th Cir.1983); *United States v. Alvarez,* 625 F.2d 1196 (5th Cir.1980) (en banc), cert. denied, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981).

Correa places emphasis on the case of *United States v. Littrell,* 574 F.2d 828 (5th Cir.1978) to support the claim that his participation amounted to no more than "mere presence or close association." His reliance on *Littrell* is misplaced.

In *Littrell* agents of the Drug Enforcement Administration acting in an undercover capacity agreed to purchase one pound of cocaine from one Marc Davi at a hair styling shop. The agents testified that they saw Davi place a telephone call and say: "everything is all right. Go ahead and bring it. You know where you're coming." 574 F.2d at 831. The agents later heard Davi say: "All right. The man is here." *Id.* The agents saw Littrell drive the car to the shop and park. Littrell got out of the car, spoke briefly to Davi, and then entered a bar next door. Davi then approached the car and retrieved a paper sack from the glove compartment. The contents of the paper sack tested positive for cocaine. *Id.*

This Court found little more than mere presence or association and reversed Littrell's conviction. The *Littrell* Court stated, *inter alia,* that there was simply no evidence that "Littrell knew of the cocaine in the car or of the overall deal that was going down." *Id.* at 832. In contrast, Correa told Carew where the cocaine was located in the Cadillac and inquired of Carew as to the whereabouts of Restrepo, demonstrating the appellant's knowledge of the cocaine in

the car and of his participation in its distribution.

A reasonable jury could conclude that Correa did exactly what he appeared to be doing: participating in the distribution of twenty pounds of cocaine. Similarly, there is sufficient evidence to support the convictions on the substantive offenses of possession with intent to distribute and distribution. *See e.g., United States v. Tamargo,* 672 F.2d 887, 890 (11th Cir.), cert. denied, —— U.S. ——, 103 S.Ct. 141, 74 L.Ed.2d 119 (1982). This was a reasonable construction of the evidence, and provided a basis for a reasonable trier of fact to find Correa guilty of the crimes charged. *See United States v. Bell,* 678 F.2d 547, 549 (11th Cir. 1982).

The convictions are AFFIRMED as to all counts.