[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 28, 2011
JOHN LEY
CLERK

_____

No. 11-10391
Non-Argument Calendar

_____

D.C. Docket No. 1:09-cr-20710-ASG-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JULIO ROLON

Defendant-Appellant.

_____

No. 11-10496
Non-Argument Calendar

_____

D.C. Docket No. 1:09-cr-20710-ASG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RODOLFO ORTIZ,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(October 28, 2011)

Before HULL, WILSON, and BLACK, Circuit Judges.

PER CURIAM:

Defendants Julio Rolon and Rodolfo Ortiz appeal their multiple convictions and consecutive life sentences stemming from their firearm offenses and their plans to rob a stash house containing 25 kilograms of cocaine. After review of the briefs and record, we affirm as to all convictions and sentences, except as to their sentences on Count 5.

## I. BACKGROUND

On July 31, 2009, Defendants Rolon and Ortiz, both with extensive prior felony convictions, were arrested after they agreed to participate in, and took substantial steps toward completing, a "reverse sting" home invasion robbery. A confidential informant ("CI") alerted law enforcement that Ortiz was seeking help

2

to rob a marijuana grow house, and Miami-Dade police and federal authorities began investigating Ortiz. Law enforcement discovered that defendant Ortiz's robbery target was not actually a marijuana grow house, and law enforcement then staged a false raid on the house to deter Ortiz's robbery.

## A. Recorded Calls for Another Robbery

Thereafter, the CI made a recorded phone call to defendant Ortiz explaining that the CI knew someone who could arrange another home invasion robbery. defendant Ortiz agreed to meet with the CI and the CI's contact, who, unbeknownst to Ortiz, was an undercover Miami-Dade police detective (the "undercover detective").

Defendant Ortiz brought defendant Rolon to the meeting with the CI and the undercover detective. At that meeting, which was audio and video recorded, the undercover detective told Ortiz and Rolon that he was a cocaine courier. The detective told the pair that (1) he typically transported between 20 and 25 kilograms of cocaine per delivery; (2) he had not been paid for his recent deliveries; and (3) he wanted to rob the house where he brought his deliveries (the "stash house") without arousing suspicion that he had participated in the robbery.

Defendants Ortiz and Rolon asked a number of questions, including whether there was cash in the stash house, whether the house was guarded, who was

3

guarding it, and how many and what type of guns the guards would be carrying. Defendant Ortiz advised the undercover detective that he would bring in a third man to help with the robbery, that he and his associates were "professionals," and that each of them would be armed and wearing police badges. Defendant Rolon specifically stated that (1) he would bring either a .9 millimeter Glock or an AR-15 assault rifle and (2) he would not hesitate to "blow up someone's head" if necessary. Ortiz, Rolon, the CI, and the undercover detective agreed that the undercover detective and the CI would take half of the cocaine at the stash house and that Ortiz, Rolon, and their third accomplice would split the other half among them.

In the following days, defendant Ortiz and the CI made several telephone calls, all recorded, during which they planned the second meeting with the undercover detective and Ortiz discussed his preparation for the robbery. At the second meeting, defendant Ortiz assured the undercover detective that Ortiz had previously committed home invasion robberies and that Ortiz and his associates would use two-way radios to communicate.

On July 31, 2009, the day of the planned robbery, the CI placed a recorded phone call to Ortiz and told him to meet the CI at a gas station. The undercover detective observed the gas station from across the street. Defendants Ortiz and

4

Rolon arrived approximately 20 minutes later and provided the CI with a black t-shirt with the letters "DEA" printed on the front, a black ski mask, a pair of black latex gloves, and other police apparel. Ortiz and Rolon then followed the CI to a warehouse, where they believed the CI was picking up a vehicle. When they arrived, law enforcement surrounded the vehicles and apprehended Ortiz and Rolon.

Among the items police recovered from Rolon's car were two black hats with the word "Narcotics" written on them, a black hat with the word "Police" written on it, two black t-shirts with the letters "DEA" on one side and the word "Police" on the other side, two black ski masks, a box of latex gloves, 18 wire tie straps, three law enforcement badges, a 9 millimeter Ruger handgun and magazine loaded with 15 rounds of ammunition, and a 9 millimeter Smith & Wesson handgun and magazine loaded with 12 rounds of ammunition.

Police recovered similar items—including a Ruger .357 Magnum revolver—from the car of codefendant Federico Dimolino, the third accomplice.

Defendant Ortiz admitted that he had intended to rob 25 kilograms of cocaine and that he planned the robbery. Ortiz also claimed responsibility for the two loaded handguns found in Rolon's car.

## B. Indictment and Convictions

In August 2009, a grand jury returned a ten-count indictment against defendants Ortiz, Rolon, and Dimolino.  Counts 1 to 5 of the indictment charged Ortiz, Rolon, and Dimolino with (1) conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846; (2) attempt to possess with intent to distribute 5 kilograms or more of cocaine, also in violation of 21 U.S.C. § 846; (3) conspiracy to interfere with commerce by threats or violence, in violation of 18 U.S.C. § 1951(a); (4) attempt to interfere with commerce by threats or violence, in violation of 18 U.S.C. § 1951(a); and (5) conspiracy to use and carry a firearm during and in relation to a crime of violence and a drug trafficking crime and to possess a firearm in furtherance of a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(o).  Count 6 charged Ortiz and Rolon, and Count 7 charged Dimolino, with using and carrying a firearm during and in relation to a crime of violence and a drug trafficking crime and possessing a firearm in furtherance of a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).[1]  Count 8 charged Ortiz and Count 9 charged Rolon with being a felon in possession of a firearm and

---

[1] The firearms listed in Count 6 were (1) a Smith & Wesson 9 millimeter pistol, and (2) a Ruger 9 millimeter pistol.  The firearm listed in Count 7 was a Ruger .357 Magnum revolver.

ammunition, in violation of 18 U.S.C. §§ 922(g) and 924(e).[2] Count 10 charged Dimolino with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g).[3] Ortiz and Rolon moved to dismiss the indictment due to outrageous government conduct. The district court denied their motions.

At trial, defendant Ortiz mounted an unsuccessful entrapment defense. On October 7, 2010, the jury convicted Ortiz on Counts 1 to 6 and Count 8 and Rolon on Counts 1 to 6 and Count 9. Counts 1 and 2 carried a minimum penalty of ten years' up to life imprisonment. 21 U.S.C. §§ 846, 841(b). Counts 3, 4, and 5 each carried sentences of up to 20 years' imprisonment. 18 U.S.C. §§ 1951(a), 924(o). Count 6 carried a minimum penalty of not less than five years' imprisonment, to be served consecutive to any other sentence. Id. §§ 924(c)(1)(A)(i), (c)(1)(D)(ii). Counts 8 and 9 carried a minimum penalty of 15 years' up to life imprisonment. Id. § 924(e)(1).

---

[2] The firearms and ammunition listed in Count 8 and Count 9 were (1) a Smith & Wesson 9 millimeter pistol; (2) three rounds of Remington 9 millimeter ammunition; (3) nine rounds of Federal 9 millimeter ammunition; (4) a Ruger 9 millimeter pistol; (5) four rounds of Federal 9 millimeter ammunition; and (6) eleven rounds of Federal 9 millimeter ammunition.

[3] The firearms and ammunition listed in Count 10 were (1) a Ruger .357 Magnum revolver, and (2) 15 rounds of Winchester .357 Magnum ammunition.

On March 29, 2010, Dimolino pled guilty to Counts 1 and 7. The district court sentenced Dimolino to 120 months' imprisonment on Count 1 and 60 months' imprisonment on Count 7, to be served consecutively, for a total sentence of 180 months' imprisonment. The government's sentencing memorandum pointed out that, unlike defendants Ortiz and Rolon, Dimolino had never been arrested for or convicted of a crime of violence. Dimolino received an offense level reduction for acceptance of responsibility and did not testify falsely at trial.

7

## C.  Consecutive Life Sentences

The district court sentenced defendants Ortiz and Rolon to life imprisonment on each of Counts 1, 2, 5, and Counts 8 and 9, respectively, all to run concurrently;[4] 240 months' imprisonment on Counts 3 and 4, to run concurrently; and consecutive terms of life imprisonment on Count 6.[5]  Prior to their crimes in this case, both Ortiz and Rolon had extensive criminal convictions, including multiple violent felonies.  Although they raise only a few sentencing issues, we explain at length how their sentences were calculated since both defendants are serving consecutive life sentences.

### 1.  Rolon's Sentence

Rolon's Presentence Investigation Report ("Rolon's PSI") showed that he had these Florida convictions: (1) four separate convictions in 1990 for aggravated battery (CR89-212), robbery with a deadly weapon (CR89-1901), grand theft in the third-degree of a motor vehicle, possession of burglary tools (89CF12435-O),

---

[4] The district court grouped together Counts 1, 2, 5, and 8 pursuant to U.S.S.G. § 3D1.2(c).  These counts were also grouped with Counts 3 and 4.  Id.  In sentencing Ortiz and Rolon to life imprisonment on Count 5 the district court exceeded the statutory maximum of 20 years' imprisonment under 18 U.S.C. § 924(o).  On remand, the district court must correct Ortiz's and Rolon's sentences on Count 5.

[5] Pursuant to U.S.S.G. § 2K2.4 and § 3D1.1(b), Count 6 was excluded from the grouping rules because the statute governing that offense requires that the term of imprisonment run consecutively to any other term of imprisonment.  See 18 U.S.C. § 924(c)(1)(D)(ii).

and aggravated assault with a deadly weapon (89CF12688-O); (2) 1997 convictions for attempted second-degree murder, possession of a firearm in the commission of a felony, and possession of a firearm by a convicted felon (CR97-4069); (3) 2000 convictions for attempted first-degree murder, attempted armed kidnapping, shooting into an occupied vehicle, and use of a firearm during a felony (97-10535); and (4) a 2000 conviction for aggravated battery with a deadly weapon (98-26377). These convictions yielded 12 criminal history points, corresponding to a criminal history category of V. In addition, because Rolon's 1990, 1997, and 2000 convictions included at least two "crime[s] of violence," Rolon was a career offender under the guidelines, which raised his criminal history category to VI. See U.S.S.G. § 4B1.1(a).

Rolon's base offense level was 34. Because Rolon's offense statutory maximum was life imprisonment on Counts 1 and 2, Rolon's career offender status raised his offense level from 36 to 37, yielding a guidelines range of 360 months' to life imprisonment. Id. § 4B1.1(b)(A).[6] Rolon's conviction on Count 6, for violating § 924(c)(1)(A), carried a consecutive sentence of not less than five

_____

[6] The PSI noted that Rolon also met the guidelines definition of an armed career criminal because he was subject to an enhanced sentence under 18 U.S.C. § 924(e). See U.S.S.G. § 4B1.4(a). Consistent with the armed career criminal guidelines, Rolon was sentenced according to his career offender offense level of 37. See id. § 4B1.4(b)(2). Unlike Ortiz, Rolon did not receive a two-level increase for obstruction of justice.

years' imprisonment. 18 U.S.C. §§ 924(c)(1)(A)(i), (c)(1)(D)(ii). This Count 6 conviction also raised Rolon's guidelines calculation to 420 months' to life imprisonment. See U.S.S.G. § 4B1.1(c)(2)(A).

Rolon's Count 6 conviction not only triggered a consecutive sentence under § 924(c)(1)(D)(ii), but also mandatory life imprisonment under 18 U.S.C. § 3559(c). Rolon's Count 6 conviction was for using and carrying a firearm during and in relation to a crime of violence and a drug trafficking crime and possessing a firearm in furtherance of a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Under 18 U.S.C. § 3559(c), a person convicted of a "serious violent felony" who has two prior "serious violent felony" convictions is subject to a mandatory life sentence.[7] Section 3559(c) defines "serious violent felony" as "a Federal or State offense, by whatever designation . . . consisting of murder . . . assault with intent to commit murder . . . kidnapping . . . robbery . . . firearms use; firearms possession (as described in

_____

[7] 18 U.S.C. § 3559(c)(1) mandates a life sentence for a person convicted of a "serious violent felony" if:
(A) the person has been convicted . . . on separate prior occasions . . . of --
(i) 2 or more serious violent felonies; or
(ii) one or more serious violent felonies and one or more serious drug offenses; and
(B) each serious violent felony or serious drug offense . . . other than the first, was committed after the defendant's conviction of the preceding serious violent felony or serious drug offense.

section 924(c)); or attempt, conspiracy, or solicitation to commit any of the above offenses," 18 U.S.C. § 3559(c)(2)(F)(i) (emphasis added), or "any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force . . . or that . . . involves a substantial risk that physical force against the person of another . . . may be used . . . ." Id. § 3559(c)(2)(F)(ii). Rolon's conviction on Count 6, in violation of 18 U.S.C. § 924(c)(1)(A)(i), qualified as a "serious violent felony" under the explicit terms of § 3559(c)(2)(F)(i). Because Rolon's 1990, 1997, and 2000 convictions included "serious violent felon[ies]" under § 3559(c), Rolon was subject to a mandatory life sentence on Count 6.[8] In addition, because the sentence for an offense under § 924(c)(1)(A) must be consecutive to any other sentence, the district court sentenced Rolon to a consecutive term of life imprisonment on Count 6. Id. § 924(c)(1)(D)(ii).

2. Ortiz's Sentence

Ortiz received an identical sentence. Ortiz's Presentence Investigation

_____

[8] On January 22, 2010, the government filed a Notice of Intent to Seek Enhanced Penalties Under 18 U.S.C. § 3559(c) listing Rolon's following convictions as "serious violent felonies": (1) 1990 convictions for aggravated battery (CR89-212) and robbery with a deadly weapon (CR89-1901), (2) 1997 convictions for attempted second-degree murder and possession of a firearm in the commission of a felony (CR97-4069), and (3) 2000 convictions for attempted first-degree murder, attempted armed kidnapping, shooting into a vehicle, use of a firearm during a felony (97-10535), and aggravated battery with a deadly weapon (98-26377). As outlined earlier, Rolon's PSI listed and described these same eight convictions as well as five others.

11

Report ("Ortiz's PSI") showed that he had over 20 prior Florida convictions: (1) a 1982 conviction for obstruction of a police officer (M82001942); (2) 1984 convictions for carrying a concealed firearm and obstruction by false information (F8414896B), grand theft auto (F84-19003), theft, no valid driver's license, and reckless driving (F84-11104); (3) a 1985 conviction for aggravated assault (F84-30194); a 1986 conviction for grand theft in the third degree (F86-026793B); 1987 convictions for burglary of a conveyance and grand theft auto (F97-14437); 1988 convictions for burglary of a dwelling, grand theft in the second degree, possession of burglary tools, criminal mischief (F87-27423B), and prostitution (B88-212277); a 1989 conviction for disorderly conduct (M89-62140); a 1990 conviction for battery (89-31358); a 1991 conviction for robbery (F90-6933); 1991 convictions for robbery, kidnapping, possession of a firearm while engaged in a criminal offense, possession of a firearm by a convicted felon, and carrying a concealed firearm (F90-13954B); 1991 convictions for third-degree murder and sale, purchase, or delivery of a controlled substance (F90-16384A);[9] 1997 convictions for possession of cocaine and resisting an officer with violence (F96-

[9] On January 23, 1987, a man was shot from a vehicle in which Ortiz was a passenger (F90-16384A). On January 10, 1990, Ortiz and an accomplice robbed a jewelry store brandishing guns (F90-13954B). On February 19, 1990, Ortiz and an accomplice robbed a woman at gunpoint and stole her car (F90-6933). Although these violent offenses occurred on separate dates, Ortiz was convicted of all these offenses on April 8, 1991.

41769).

These convictions yielded eight criminal history points, corresponding to a criminal history category of IV.  In addition, because Ortiz's 1991 conviction for robbery (F90-6933) and his 1997 conviction for resisting an officer with violence (F96-41769) were "crime[s] of violence," Ortiz was a career offender under the guidelines, which raised his criminal history category to VI.  See U.S.S.G. § 4B1.1(a).  Although Ortiz's PSI showed that he had multiple violent felonies and controlled substance offenses, the PSI listed these 1991 and 1997 convictions as the basis of Ortiz's career offender status.[10]

Ortiz's base offense level was 34.  The district court added a two-level increase for Ortiz's leadership role, yielding an adjusted offense level of 36.[11]  In addition, because Ortiz's offense statutory maximum was life imprisonment on Counts 1 and 2, Ortiz's career offender status raised his offense level from 36 to 37.  See U.S.S.G. § 4B1.1(a)–(b).  After increasing Ortiz's offense level from 36

---

[10] A defendant is a "career offender" if (1) he was "at least eighteen years old at the time [he] committed the instant offense of conviction," (2) "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense," and (3) "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

[11] Ortiz's § 846 offenses on Counts 1 and 2 involved at least 15 but less than 50 kilograms of cocaine, yielding an offense level of 34.  U.S.S.G. § 2D1.1. The two-level increase for his leadership role increased his offense level to 36. Id. § 3B1.1(c).

13

to 37 for Ortiz's career offender status, the district court added another two-level

increase for obstruction of justice due to Ortiz's perjurious trial testimony.  This

raised Ortiz's offense level to 39, yielding a guidelines range of 360 months' to

life.[12]  Like Rolon's conviction on Count 6, Ortiz's conviction on Count 6 carried

a minimum <u>consecutive</u> five-year sentence.[13]  This conviction raised Ortiz's

guidelines calculation to 420 months' to life.  <u>See</u> U.S.S.G. § 4B1.1(c)(2)(A).

Unlike Rolon, Ortiz's conviction on Count 6 did not trigger a <u>mandatory</u> life

sentence under 18 U.S.C. § 3559(c).  Though Ortiz had committed two "serious

violent felonies" over the course of several years, he was convicted of these

predicate offenses on the same day.[14]  As a result, he was not convicted of his

---

[12] The district court erroneously added a two-level increase to Ortiz's base offense level for obstruction of justice <u>after</u> assessing an increase from 36 to 37 due to Ortiz's career offender status. The district court should have added the two-level increase for obstruction of justice <u>before</u> considering the effect of Ortiz's career offender status under U.S.S.G. § 4B1.1.  <u>See</u> § 1B1.1(a) (instructing the court to consider "adjustments as appropriate related to victim, role, and obstruction of justice," <u>id.</u> § 1B1.1(a)(3), <u>before</u> "[d]etermin[ing] from Part B of Chapter 4 any other applicable adjustments," <u>id.</u> § 1B1.1(a)(6)).

   That calculation would have yielded a base offense level of 34, plus a two-level increase for Ortiz's leadership role, plus a two-level increase for obstruction of justice, yielding a total of 38.  Ortiz's offense level 38 calculation plus criminal history category VI would have yielded a guidelines range of 360' months to life, which is equal to that using an offense level of 39 with the same category VI; thus, the district court's error as to his offense level was harmless.

[13] Ortiz's PSI indicated that Ortiz also met the guidelines definition of an armed career criminal because he was subject to an enhanced sentence under 18 U.S.C. § 924(e).  <u>See</u> U.S.S.G. § 4B1.4(a) ("A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal.").  The district court did not rely on Ortiz's having armed career criminal status, and the government does not argue it on appeal.

[14] <u>See</u> <u>supra</u> n.9.

second qualifying felony "after [his] conviction of the preceding serious violent felony or serious drug offense," as required by 18 U.S.C. § 3559(c)(1)(B). The district court noted that Ortiz had avoided his consecutive life sentence being mandatory under § 3559(c) "for technical reasons," but—unlike Rolon—was the "organizer and leader of this conspiracy, procured the guns and the items to be used in the robbery, and then also testified patently falsely at this trial."[15] Thus, the district court sentenced Ortiz to a consecutive term of life imprisonment on Count 6.

Defendants Ortiz and Rolon appeal their convictions and sentences on multiple grounds.[16]

## II. DISCUSSION

### A. Substantive Due Process

Ortiz and Rolon contend that the district court erroneously denied their

---

[15] The district court explained:
[B]ut for the fortuitous fact that [Ortiz] was sentenced to these particular crimes . . . each of which were done on different days and very violent in themselves, [Ortiz], like Rolon, would have been subject to the same enhancement and there wouldn't be very much to argue about here in terms of what his sentence would be.

But because of the fact that even though these were different crimes committed on different days, he was sentenced on the same day, then for technical reasons he avoided that enhancement, but I think that that is a concern that has to be addressed here, that but for a technicality, he would be in the same exact situation as Rolon.

[16] Both parties adopted all relevant portions of their codefendant's briefs. Where applicable, we consider each issue with respect to both defendants.

motions to dismiss the indictment.[17]  Ortiz's and Rolon's motions argued that the government's "reverse sting" tactics violated their substantive due process rights. Specifically, Ortiz and Rolon claimed that the government—by staging a false raid of a purported marijuana grow house, creating a fictional cocaine stash house, selecting a large drug quantity, and arresting them at the warehouse before they had proceeded to the robbery location—violated fundamental notions of justice and fair play.

To prevail on a claim of outrageous government misconduct, a defendant must show that, under the totality of the circumstances, the law enforcement technique at issue was so outrageous that it was fundamentally unfair and shocking to the universal sense of justice mandated by due process.  See United States v. Haimowitz, 725 F.2d 1561, 1577 (11th Cir. 1984).  This defense "can only be invoked in the rarest and most outrageous circumstances."  Id.  (quotation marks omitted).  We consistently have recognized that government infiltration of criminal activity is a permissible means of investigation and repeatedly rejected challenges to the "reverse sting" method of police investigation.  See, e.g., United

_____

[17] We review for abuse of discretion a district court's denial of a motion to dismiss an indictment.  United States v. Palomino Garcia, 606 F.3d 1317, 1322 (11th Cir. 2010).  Whether a defendant was denied due process of law based on claims of outrageous government conduct is a question of law reviewed de novo. United States v. Edenfield, 995 F.2d 197, 200 (11th Cir. 1993).

16

States v. Sanchez, 138 F.3d 1410, 1413 (11th Cir. 1998); United States v. Savage, 701 F.2d 867, 869–70 (11th Cir. 1983); United States v. Rogers, 701 F.2d 871, 872 (11th Cir. 1983). Where the government merely presents a defendant with a routine criminal opportunity of which the defendant is more than willing to take advantage, the government's actions do not amount to outrageous conduct warranting dismissal. See Savage, 701 F.2d at 869–70.

Based on our precedent, defendants Ortiz and Rolon have not shown that the government's law enforcement techniques violated substantive due process. Rather, this Court has affirmed the constitutional validity of law enforcement techniques similar to the "reverse sting" at issue here. For example, in Sanchez, we held that federal agents' proposing the robbery of a fictitious house purportedly stocked with 50 kilograms of cocaine and 300 pounds of marijuana did not "approach that demonstrable level of outrageousness the case law suggests would be necessary for reversal of these defendants' convictions." 138 F.3d at 1414; see also Rogers, 701 F.2d at 872 n.1 (concluding the government did not act outrageously when, in the face of defendants' wavering, the government "sweetened" a drug deal by offering to lower the price of drugs, put the defendants up in a hotel room, and furnish them with women).

Similar to Sanchez, the government here merely presented defendants Ortiz

17

and Rolon with a fictitious home invasion opportunity that the defendants readily accepted and pursued. Importantly, Ortiz had planned to rob a marijuana grow house before law enforcement conducted a false raid on his initial robbery target and before the CI introduced Ortiz to the undercover detective who proposed the cocaine stash house robbery. Further, in his meetings with the CI and the undercover detective, Ortiz claimed to have committed home invasion robberies in the past and explained that he and Rolon were "professionals." After accepting the undercover detective's proposal, Ortiz and Rolon actually planned the details of the stash house robbery independent of any specific government suggestion or guidance. Ortiz and Rolon—not the detective—decided to pose as police officers and to arrive armed, and Ortiz and Rolon subsequently procured police apparel and arrived with guns on the day of the robbery. In short, although the government presented a criminal opportunity, Ortiz and Rolon eagerly accepted that opportunity and orchestrated the scheme. In light of the totality of the facts here and our circuit precedent, we conclude that the district court did not abuse its discretion by denying defendants Ortiz's and Rolon's motions to dismiss the indictment.

## B. Prosecutor's Closing Argument

Defendants Ortiz and Rolon each claim that the district court erroneously

18

denied their motions for a mistrial based on allegedly improper statements by the prosecutor during his closing argument. We review each statement separately.

1. Prosecutor's Statement that Ortiz was a Convicted Murderer

During his closing statement, the prosecutor called Ortiz a "convicted murderer." Ortiz did not contemporaneously object to this statement but moved for a mistrial—after the prosecutor had concluded his closing argument and after the jury was excused—on the ground that the statement was improper.

In the absence of a contemporaneous objection, we review for plain error the district court's failure to correct an improper closing argument. United States v. Pendergraft, 297 F.3d 1198, 1204 (11th Cir. 2002). Plain error requires a legal error that is plain and that affects the defendant's substantial rights. United States v. Pielago, 135 F.3d 703, 708 (11th Cir. 1998). We review the denial of a motion for a mistrial for abuse of discretion. United States v. Foley, 508 F.3d 627, 632 (11th Cir. 2007).

We first find no error in the district court's denial of Ortiz's motion for a mistrial based on the district court's failure to correct the prosecutor's statement that Ortiz was a "convicted murderer." The prosecutor's statement was supported by the record, which contained a certified copy of Ortiz's prior conviction for third-degree murder. The government properly sought admission of Ortiz's prior

murder conviction to rebut Ortiz's testimony relating to his entrapment defense, see United States v. Duran, 596 F.3d 1283, 1298–99 (11th Cir. 2010), and the government was entitled to refer to this evidence already introduced at trial. See United States v. Diecidue, 603 F.2d 535, 553 (5th Cir. 1979) ("Unflattering characterizations of defendants are not reversible error when supported by the evidence.").[18]  Because the prosecutor's statement was not improper, we hold that the district court did not abuse its discretion by denying Ortiz's motion for a mistrial on this ground.

2.  Prosecutor's Statement Regarding Reasonable Doubt

During his closing argument, the prosecutor stated that "juries have been finding defendants guilty for 250 years in this country, all beyond a reasonable doubt." Defendant Rolon contemporaneously objected to this statement and reserved a motion for a mistrial.  The district court sustained the objection, struck the prosecutor's statement from the record, and stated that the court would "instruct on reasonable doubt without comment on what juries have done for 200 years."  At that time, the court did not directly instruct the jury to ignore the prosecutor's statement.

---

[18] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Defendant Rolon later moved for a mistrial on ground that the prosecutor's comment was "over the top." In denying Rolon's motion, the district court explained to Rolon's counsel that the court understood the statement merely to mean that reasonable doubt had been the standard for guilt for 250 years. The district court further stated it "made that correction in any event" by "sustain[ing] the objection and . . . [telling] the jury that [it was] striking that argument and . . . would instruct on reasonable doubt without comment on what juries have done for 200 or so years." Neither Rolon nor Ortiz objected further.[19]

Rolon now argues for the first time on appeal that the court exacerbated the prejudicial effect of the prosecutor's improper statement by repeating the statement. As noted above, we review the denial of a motion for a mistrial for abuse of discretion. Foley, 508 F.3d at 632. Assuming a prosecutor's comments were improper, we reverse only if the comments affected the defendant's substantial rights. United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006). A defendant's substantial rights are prejudicially affected if a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different. Id. If the record contains sufficient independent evidence of guilt,

_____

[19] At this point in the proceedings, Ortiz specifically adopted Rolon's motion and objections with respect to the prosecutor's comment.

21

any error is harmless.  Id.

We find no abuse of discretion in the district court's denial of Rolon's motion for a mistrial based on the single reasonable-doubt comment.  Even if the prosecutor's statement was improper, the district court promptly struck the statement from the record and advised that the court would instruct the jury on reasonable doubt.  Subsequently, the district court properly instructed the jury on the reasonable doubt standard.  Because "[w]e generally presume that jurors follow their instructions," the district court's instruction on reasonable doubt was sufficient to cure any prejudice caused by the prosecutor's statement.  See United States v. Hill, 643 F.3d 807, 829 (11th Cir. 2011).

We further reject the argument that Ortiz and Rolon were prejudiced by the district court's repetition of the prosecutor's remark.  The district court merely stated that it would instruct the jury on reasonable doubt "without regard" to the historical practice of juries.  To the extent the district court repeated the prosecutor's statement in sustaining the defendants' objection, it was to illustrate that the district court's instructions would render the prosecutor's remark irrelevant.  And, as noted above, before the jury deliberated, the district court gave the jury detailed instructions on the meaning of reasonable doubt.

Even assuming some residual prejudicial effect remained, the prosecutor's

statement did not affect Ortiz's and Rolon's substantial rights because—in light of the substantial independent evidence of their guilt—no reasonable probability exists that this statement altered the outcome of the trial.  See United States v. Adams, 74 F.3d 1093, 1097 (11th Cir. 1996) (holding that improper prosecutorial references did not raise a reasonable probability that, but for the remarks, the outcome would be different due to "sufficient independent evidence establishing guilt").  As we note elsewhere in our discussion, numerous tape-and-video-recorded conversations, abundant physical evidence seized from Rolon's vehicle, and Ortiz's own inculpatory statements provided ample evidence of Ortiz's and Rolon's guilt.

## C.  Ortiz's Closing Argument

Ortiz claims that the district court erred by precluding his counsel from analogizing the government's case to the movie Minority Report in his closing argument.  Before the district court, Ortiz sought to analogize his arrest and prosecution to the "Precrime" law enforcement unit depicted in that movie that, in the words of Ortiz's counsel, "stop[ped] people before they might commit a crime in the future and [took] them out."  On appeal, Ortiz claims that in Minority Report the government tried to arrest a person because the government "anticipated" that the person would commit a crime in the future, and that this is

23

what happened in Ortiz's case.

We review for abuse of discretion a court's decision to limit a party's closing argument. United States v. Williams, 526 F.3d 1312, 1320 (11th Cir. 2008). In closing argument, a party is entitled to make all legal arguments supported by the facts. Id. However, a party may not argue inaccurate or inapplicable theories of law. Id.

Here, the district court did not abuse its discretion by prohibiting Ortiz's counsel from referencing Minority Report. Ortiz's theory of law—that he was arrested only because the government "anticipated" that he would later commit a crime—was plainly inapplicable to Ortiz because it was not supported by the evidence, the government's theory of prosecution, or even by Ortiz's own entrapment defense. The trial evidence showed that Ortiz planned to rob a marijuana grow house even before he met the undercover detective. Audio and video recordings documented Ortiz's meetings with Rolon, the CI, the undercover detective, and codefendant Dimolino and illustrated their resulting conspiracy to rob the detective's fictitious stash house. Authorities recovered guns, ammunition, and police paraphernalia from Rolon's car (in which Ortiz was riding) after the pair were arrested on the way to the robbery. This evidence showed that Ortiz was arrested only after committing the crimes for which he was charged.

24

Ortiz claims that he was trying to argue only that the government cannot arrest people for crimes they have not yet committed. But this argument is inapplicable to Ortiz's entrapment defense, which presumes that the defendant has committed the charged crime. Even if this argument were applicable to Ortiz's defense, the record shows that Ortiz's counsel remained free to make this argument without reference to Minority Report. Indeed, after the district court sustained the government's objection to the movie analogy, Ortiz's counsel argued to the jury that "the Government used a plan that . . . was to take Mr. Ortiz from the community because the prediction under their scenario was he eventually . . . would commit a crime in the future." "That," he explained, "is entrapment."

## D. Entrapment Jury Instruction

As to his entrapment defense, Ortiz requested a jury instruction on entrapment that followed the Eleventh Circuit pattern instruction 13.1. Instead, the district court instructed the jury in accordance with the Eleventh Circuit entrapment pattern instruction 13.2, which also explains entrapment. Instruction 13.2 differs from 13.1 only in that 13.2 provides the additional instruction that jurors "must not evaluate the conduct of Government officers or others under their direction to decide whether [the jurors] approve of the conduct or think it was moral." Compare Eleventh Circuit Criminal Pattern Jury Instructions (Criminal

25

Cases) 2010, Special Instruction no. 13.1, with id. no. 13.2.[20] Ortiz claims that the 13.2 pattern instruction on entrapment, given in his case, was erroneous because it "skewed the jury's ability to correctly apply the facts adduced at trial to the entrapment defense." Specifically, Ortiz argues that precluding the jury from concluding that the government acted wrongfully was tantamount to precluding the jury's finding that the government entrapped him.

We review jury instructions de novo to determine whether they misstated the law or misled the jury. United States v. Simpson, 228 F.3d 1294, 1298 (11th Cir. 2000).

We reject Ortiz's argument that the district court's entrapment instruction, which followed the 13.2 pattern instruction nearly verbatim, was erroneous. An entrapment defense consists of "two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant." United States v. Padron, 527 F.3d 1156, 1160 (11th Cir. 2008). Both pattern jury instructions 13.1 and 13.2 accurately state these elements. See United States v. Schlaen, 300 F.3d 1313, 1316 (11th Cir. 2002) (rejecting as meritless an identical challenge in which a defendant argued that the district court should have given Eleventh Circuit

---

[20] The instruction given is reproduced in Appendix A to this opinion.

26

pattern entrapment instruction 12.1 rather than pattern instruction 12.2).[21] The

additional language of pattern instruction 13.2 merely tells jurors that they may

not consider the moral valence of the government's pretending to be part of a

criminal enterprise. This is an accurate statement of the law. Because the moral

character of the government's tactics are irrelevant to whether the government

induced a crime or whether the defendant was predisposed to commit a crime, the

13.2 pattern instruction does not preclude a jury from concluding that a defendant

was entrapped. Here, as in any case involving an entrapment defense, the jury

could have concluded that Ortiz was entrapped even had they found that the

government acted immorally. The entrapment instruction in 13.2 was not error.

## E. 18 U.S.C. § 924(c)(1)(A) Jury Instruction

Defendants Ortiz and Rolon argue that the district court erroneously

instructed that the jury could convict them under 18 U.S.C. § 924(c)(1)(A) for

either using or carrying a firearm. Ortiz and Rolon claim that because their

indictment charged them with using and carrying a firearm, the district court's jury

instructions and the district court's later response to a jury question about the

---

[21] Eleventh Circuit pattern instructions 12.1 and 12.2 later became pattern instructions 13.1 and 13.2, respectively. See Eleventh Circuit Criminal Pattern Jury Instructions (Criminal Cases) 1997.

and/or distinction amounted to a constructive amendment of their indictment in violation of their right to be tried only on indicted charges. See United States v. Peel, 837 F.2d 975, 979 (11th Cir. 1988).

As noted earlier, Count 5 was a conspiracy offense regarding firearms, while Count 6 was the substantive offense as to the same firearms. Count 5 of the indictment charged Ortiz and Rolon with conspiring to "use and carry a firearm" during a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(o). Similarly, Count 6 charged that Ortiz and Rolon "did knowingly use and carry a firearm" during a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). The district court proposed to instruct the jury that the government was required to prove, for the conspiracy offense, that "the object of the unlawful plan was to use or carry a firearm" and for the substantive offense, that Ortiz and Rolon "knowingly used, carried, or possessed a firearm." Ortiz and Rolon objected to this wording on grounds that the "or" wording of the instruction varied from the "and" wording of the indictment. The district court overruled these objections and instructed the jury in the disjunctive.

During their deliberations, the jury sent the district court a note asking this: "In the Indictment, the language for Counts 5 and 6 are 'use and carry.' In the

verdict, #5 and #6 read 'used <u>or</u> carried.' Please explain the discrepancy between the conjunctions <u>and</u> and <u>or</u>" (emphasis in original). Over Ortiz's and Rolon's objections, the district court responded as follows:

> The statute in question refers to "uses or carries" and does not require that both must be proven. The government has charged both in the indictment but only has to prove that the defendant "used" or "carried" a weapon as specified in the instructions. You will note that the jury instructions provide that "the government has to prove only one of those ways, not both. If you find either "use" or "carry" in relation to the crimes charged in Counts 1-4, that is sufficient.

This Court reviews for abuse of discretion a district court's response to a jury question. United States v. Lopez, 590 F.3d 1238, 1247 (11th Cir. 2009). Original jury instructions are reviewed <u>de novo</u>. Simpson, 228 F.3d at 1298.

We find no error in either the district court's initial instruction or the district court's response to the jury's question. Our precedent compels this conclusion. First, "the law is well established that where an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on proof of only one of the means." Id. at 1300; see also United States v. Cornillie, 92 F.3d 1108, 1110 (11th Cir. 1996). Second, in Simpson, we considered a challenge to jury instructions regarding § 924(c)(1)(A) identical to that Ortiz and Rolon now raise. 228 F.3d at 1300. In Simpson, we held that the conjunctive

29

language of the indictment and the disjunctive language of the § 924(c)(1)(A) jury charge meant that the defendant "could not possibly have been convicted on a ground that was not alleged in the indictment." Id.; see also United States v. Poarch, 878 F.2d 1355, 1358 (11th Cir. 1989). Accordingly, we concluded that the disjunctive jury charge did not amount to a constructive amendment to the indictment. Simpson, 228 F.3d at 1300.

The same rationale applies here. Counts 5 and 6 of Ortiz and Rolon's indictment charged in the conjunctive. However, criminal liability under 18 U.S.C. § 924(c)(1)(A) attaches where a person "uses or carries a firearm" (emphasis added). The same is true of the conspiracy charge under § 924(o). See id. § 924(o) (providing penalties for "[a] person who conspires to commit an offense under subsection (c)"). Because these statutes require a jury to find only that a defendant either used or carried a firearm, the district court's instructions accurately characterized the law. The jury could not have convicted Ortiz and Rolon on a ground not alleged in the indictment because the indictment language was broader than that of the statute.

**D. Allen Jury Instruction**

A day and a half into their deliberations, the jury returned guilty verdicts for

Ortiz on Count 8 and Rolon on Count 9 but left incomplete the verdict form blanks

for the remaining counts.  At that time, over the defendants' objection, the district

court gave an "Allen"[22] charge nearly identical to the Eleventh Circuit pattern

Allen instruction.  See Eleventh Circuit Pattern Jury Instructions (Criminal Cases)

2010, Trial Instructions no. 5 ("Modified Allen Charge").  Four hours later, the

jury convicted Ortiz and Rolon on all remaining counts against them.

Rolon and Ortiz argue that the Allen instruction was inherently coercive

because the jury already had deliberated for a day and a half.  Moreover, Rolon

argues that the charge was especially coercive given the current economy because

the charge emphasized the expense that a new trial would impose on the

government.

We review a district court's decision to give an Allen charge for abuse of

discretion, and will find such an abuse only if the charge was inherently coercive.

See United States v. Woodard, 531 F.3d 1352, 1364 (11th Cir. 2008).  Though we

have expressed concern about Allen charges, see United States v. Rey, 811 F.2d

1453, 1457–60 (11th Cir. 1987), we have approved this Circuit's pattern

Allen charge on numerous occasions.  See, e.g., Woodard, 531 F.3d at 1364;

---

[22] An "Allen" charge, named after Allen v. United States, 164 U.S. 492, 501–02, 17 S.Ct. 154, 157 (1896), describes instructions given to a jury that cannot reach a verdict.

United States v. Dickerson, 248 F.3d 1036, 1050 (11th Cir. 2001); United States v. Trujillo, 146 F.3d 838, 846 (11th Cir. 1998). In assessing an Allen charge, we consider the totality of the circumstances, including the language of the charge and the amount of time between its issuance and the jury's verdict. Woodard, 531 F.3d at 1364.

In this case, the district court did not abuse its discretion by giving an Allen charge. The district court's charge was substantively identical to charges we previously have approved. See, e.g., Dickerson, 248 F.3d at 1050; Rey, 811 F.2d at 1461. The district court instructed the jury that it could take as much time as it needed to deliberate, and the jury returned its verdict four hours later, an interval far in excess of that we previously have held does not indicate impermissible coercion. See Rey, 811 F.2d at 1458 (jury returned verdict 95 minutes after Allen charge). We also reject Rolon's conjectural claim that this Allen charge had a coercive effect due to alleged psychological effects of the national economy or the financial condition of the government.

## E. Ortiz's Classification as a Career Offender

Ortiz next claims that his Florida conviction on August 4, 1997 for

"resisting an officer with violence," in violation of Fla. Stat. § 843.01,[23] no longer

qualifies as a predicate "crime of violence" offense for career offender status

under § 4B1.2 of the guidelines, and thus he must be resentenced.[24]

We review de novo whether a prior conviction qualifies as a "crime of

violence" under the sentencing guidelines. United States v. Palomino Garcia, 606

F.3d 1317, 1326 (11th Cir. 2010).

In United States v. Nix, 628 F.3d 1341 (11th Cir. 2010), petition for cert.

filed (U.S. June 23, 2011) (No. 11-5011), this Court held that a conviction under

Fla. Stat. § 843.01, resisting an officer with violence, qualified as a "violent

felony" under the "residual clause" of the Armed Career Criminal Act ("ACCA"),

18 U.S.C. § 924(e)(2)(B). Nix, 628 F.3d at 1342. The ACCA's residual clause

defines "violent felony" as including "any crime . . . that presents a serious

---

[23] Fla. Stat. § 843.01 provides that "[w]hoever . . . resists, obstructs, or opposes any officer . . . by offering or doing violence to the person of such officer . . . is guilty of a felony in the third degree . . . ."

[24] Section 4B1.2 defines "crime of violence" for career offender status as:
any offense . . . punishable by imprisonment for a term exceeding one year, that –
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2 (emphasis added).

33

potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).[25] We

repeatedly have read the definition of "violent felony" under the ACCA as

"virtually identical" to the guidelines definition of a "crime of violence," which

includes "conduct that presents a serious potential risk of physical injury to

another." U.S.S.G. § 4B1.1(a); United States v. Archer, 531 F.3d 1347, 1352

(11th Cir. 2008). Therefore, Nix a fortiori forecloses Ortiz's claim that his prior

Florida § 843.01 conviction does not qualify as a predicate "crime of violence" for

career offender status.

We also reject Ortiz's claim that the Supreme Court's remand in our

unpublished case, United States v. Jackson, 355 F. App'x 297 (11th Cir. 2009),

vacated by 131 S. Ct. 896 (2011), makes any difference. Jackson is not binding

precedent. 11th Cir. R. 36-2. In any event, in Jackson, we held that Fla. Stat.

§ 843.01 qualifies as a "violent felony" under the ACCA because the "use,

---

[25] The ACCA defines "violent felony" as:
any crime punishable by imprisonment for a term exceeding one year . . . that –
    (i) has as an element the use, attempted use, or threatened use of physical force
    against the person of another; or
    (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise
    involves conduct that presents a serious potential risk of physical injury to
    another.
18 U.S.C. § 924(e)(2)(B) (emphasis added). In some instances, the courts have evaluated
§ 924(e)(2)(B)(i) and whether the "use of physical force" is "an element" of the predicate crime.
See, e.g., United States v. Johnson, 559 U.S. –, 130 S. Ct. 1265 (2010). In this case we focus on
the ACCA residual clause in § 924(e)(2)(B)(ii) and whether Ortiz's predicate offense presented
"a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

attempted use, or threatened use or physical force against the person of another"
was an element of the offense. Jackson, 355 F. App'x at 299. The Supreme Court
vacated that opinion and remanded to this Court for further consideration in light
of Johnson v. United States, 559 U.S. –, –, 130 S. Ct. 1265, 1268 (2010). Jackson,
131 S. Ct. at 896.

In Johnson, the Supreme Court held that the Florida offense of battery by
"[a]ctually and intentionally touch[ing] another person," Fla. Stat. § 784.03(1)(a)
is not a "violent felony" under the ACCA.[26] Johnson, 130 S. Ct. at 1270
(alteration in original). The Johnson Court concluded that because criminal
liability under § 784.03(1)(a) is satisfied by "any intentional physical contact, 'no
matter how slight,'" that crime does not have the "use . . . of physical force" as an
element, as required by the ACCA definition of "violent felony." Id. at 1270
(quoting State v. Hearns, 961 So. 2d 211, 218 (Fla. 2007)).[27] Notably, the Johnson

---

[26] Fla. Stat. § 784.03(1)(a) provides:
The offense of battery occurs when a person:
    1. Actually and intentionally touches or strikes another person against the will of
    the other; or
    2. Intentionally causes bodily harm to another person.

[27] The Supreme Court in Johnson assumed that the defendant's conviction rested upon
"the least of the[] acts" specified in Fla. Stat. § 784.03(1)(a) and considered only whether battery
by "[a]ctually and intentionally touch[ing]" qualified as a predicate offense under the ACCA.
Johnson, 130 S. Ct. at 1269 (alteration in original).

Court did not consider whether a § 784.03(1)(a) battery offense qualified as a violent felony under the ACCA residual clause, 18 U.S.C. § 924(e)(2)(B)(ii), because the government "disclaimed at sentencing any reliance upon the [ACCA] residual clause." Id. at 1274.

On remand in Jackson, this Court again held that Florida's § 843.01 crime of resisting an officer with violence is a "violent felony," but this time we based the ruling on the ACCA residual clause. United States v. Jackson, No. 09-11602, 2011 WL 4360910, at *1 (11th Cir. Sept. 20, 2011) (unpublished). Following our binding precedent in Nix, we explained that the ACCA residual clause includes crimes that present "a serious potential risk of physical injury," and thus, under the ACCA residual clause, "resisting an officer with violence constitutes a violent felony." Id. (emphasis omitted). Consequently, resisting an officer with violence is a "crime of violence" too under § 4B1.2 of the guidelines. See Archer, 531 F.3d at 1352.[28] Therefore, the Supreme Court's decision in Johnson and our decision in Jackson on remand do not help Ortiz either.

## F. Reasonableness of Ortiz's Life Sentences

---

[28] In any event, we note that in addition to the two convictions used by the district court (F90-6933 and F96-41769), Ortiz had at least two other qualifying convictions: his 1991 conviction for third-degree murder (F90-16384A) and his additional but separate 1991 conviction for robbery (F90-13954B). See supra nn.9 & 10; U.S.S.G. § 4B1.1.

Ortiz argues that his life sentences are substantively unreasonable.[29] Ortiz claims that at the time the government reverse sting operation began, he had been out of state custody for over a year, was trying to turn his life around, and was attending psychiatric and substance abuse programs. Ortiz argues that because the district court was required to consider these factors under 18 U.S.C. § 3553(a), the court should not have imposed life sentences.

Our review of the substantive reasonableness of a sentence examines the totality of the circumstances and includes an inquiry into whether the statutory factors in 18 U.S.C. § 3553(a) support the sentence in question. United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to protect the public from further crimes of the defendant. Id. When the district court imposes a sentence within the advisory guidelines range, we will ordinarily expect that choice to be a reasonable one. Id. We reverse only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that

[29] Ortiz's brief does not specify whether Ortiz objects to his first life sentence on Counts 1, 2, 5, and 8, or to his second life sentence on Count 6. We assume that Ortiz claims that both of his life sentences are substantively unreasonable.

37

lies outside the range of reasonable sentences dictated by the facts of the case."
United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008).

Ortiz has not established that his life sentences are substantively unreasonable. His first life sentence was within his guidelines range. His second life sentence was consecutive because § 924(c)(1)(D)(ii) mandates a consecutive sentence. More importantly, the record shows that Ortiz's life sentences were adequately justified with reference to the § 3553(a) factors. As noted above, Ortiz had numerous prior convictions, including six convictions for crimes that involve violence. He was the organizer and leader of the criminal conspiracy in this case, and he actually intended to carry out a violent robbery consistent with crimes he and Rolon had committed in the past. The district court rejected Ortiz's contention that he was turning his life around as "nonsense" and explained its conclusion that Ortiz had "testified patently falsely" at trial. In light of these factors, we cannot say that Ortiz's sentences were substantively unreasonable.

## G. Rolon's Mandatory Life Sentence Under 18 U.S.C. § 3559(c)

Rolon challenges his second, consecutive life sentence on Count 6. Rolon argues, for the first time on appeal, that he should not have been subject to an enhanced mandatory term of life imprisonment under § 3559(c) because the

government presented no evidence at his sentencing hearing to validate the two prior convictions upon which the § 3559(c) enhancement relied. Rolon further claims that, even though he was represented by counsel in proceedings that led to all of his prior convictions, these prior convictions are void for § 3559(c) purposes because his assistance of counsel in all but one of those prior cases was ineffective.

We review for plain error arguments raised for the first time on appeal. United States v. Bacon, 598 F.3d 772, 775 n.1 (11th Cir. 2010). Plain error requires a legal error that is plain and that affects the defendant's substantial rights. Pielago, 135 F.3d at 708.

The district court committed no reversible error in sentencing Rolon because the mandatory life sentencing provision of § 3559(c) squarely applied to Rolon. As noted earlier, Rolon's PSI and the government's Notice of Intent to Seek Enhanced Penalties Under 18 U.S.C. § 3559(c) showed that he was convicted of multiple Florida state crimes that qualify as "serious crimes of violence." Those crimes were (1) aggravated battery (CR89-212); (2) robbery with a deadly weapon (CR89-1901); (3) attempted second-degree murder and possession of a firearm in the commission of a felony (CR97-4069); (4) attempted

first-degree murder, attempted armed kidnapping, shooting into a vehicle, and use of a firearm during a felony (97-10535); and (5) aggravated battery with a deadly weapon (98-26377). Rolon filed no objections to the PSI's factual statements that he was previously convicted of these crimes, and Rolon does not now claim that he was not convicted of these crimes. A failure to object to allegations of fact in a presentence investigation report admits those facts for sentencing purposes. United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006). As a result, the absence of confirmatory evidence of Rolon's prior convictions is unavailing.

Nor does Rolon's claim—that he was convicted of these predicate felonies without the effective assistance of counsel—vitiate these convictions for the purposes of § 3559(c). Rolon may not collaterally attack his prior state convictions in a federal sentencing proceeding on grounds that his state counsel was ineffective. Custis v. United States, 511 U.S. 485, 496–97, 114 S. Ct. 1732, 1738–39 (1994); United States v. Covington, 565 F.3d 1336, 1345 (11th Cir. 2009). Such a collateral attack is available only if a defendant who has not waived his right to counsel was convicted of the predicate crime without having counsel appointed at all. Custis, 114 S. Ct. at 1738–39. Because Rolon, by his own admission, was represented by counsel in the proceedings that led to his predicate

state convictions, Rolon may not now challenge their application to § 3559(c).

## H. Constitutionality of Rolon's Life Sentences

Rolon further argues that his consecutive life sentences are cruel and unusual in violation of the Eighth Amendment. Rolon's argument is foreclosed by our precedent holding that a sentence of life imprisonment on drug charges is not per se cruel and unusual. See United States v. Willis, 956 F.2d 248, 251 (11th Cir. 1992); see also Harmelin v. Michigan, 501 U.S. 957, 994, 111 S. Ct. 2680, 2701 (1991) ("Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense . . . ."). Importantly, too, Rolon was also convicted of a § 924(c)(1)(A) firearm offense in this case and had an extensive criminal record, including multiple violent felonies. Section 3559(c), mandating a life sentence, squarely applied to Rolon. And § 924(c)(1)(D)(ii) made that sentence consecutive. Rolon's Eighth Amendment claim clearly fails. See Rummel v. Estelle, 445 U.S. 263, 284–85, 100 S. Ct. 1133, 1145–46 (1980) (explaining that sentencing based on a defendant's criminal history is not cruel and unusual under the Eighth Amendment).

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** all of Ortiz's and Rolon's

convictions and sentences except as to their sentences on Count 5, and we

**VACATE** Ortiz's and Rolon's sentences as to Count 5, and **REMAND** to the

district court for resentencing on Count 5.

**AFFIRMED** in part and  **VACATED AND REMANDED** in part.

**Appendix A**

The district court gave the following entrapment instruction:

"Entrapment" occurs when law-enforcement officers or others under their direction persuade a defendant to commit a crime the defendant had no previous intent to commit.

The Defendant has claimed to be a victim of entrapment regarding the charged offense.

The law forbids convicting an entrapped defendant.

But there is no entrapment when a Defendant is willing to break the law and the Government merely provides what appears to be a favorable opportunity for the Defendant to commit a crime.

For example, it's not entrapment for a Government agent to pretend to be someone else and offer – directly or through another person – to engage in an unlawful transaction.

You must not evaluate the conduct of Government officers or others under their direction to decide whether you approve of the conduct or think it was moral.

So a defendant isn't a victim of entrapment if you find beyond a reasonable doubt that the Government only offered the defendant an opportunity to commit a crime the Defendant was already willing to commit.

But if there is a reasonable doubt about whether the Defendant was willing to commit the crime without the persuasion of a Government officer or a person under the Government's direction, then you must find the Defendant not guilty.