[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12909
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 22, 2011
JOHN LEY
CLERK

D.C. Docket No. 8:08-cr-00425-SDM-TGW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CAREL A. PRATER,
a.k.a. Chad Prater,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 22, 2011)

Before HULL, PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Carel Prater appeals his sentence of 336 months of imprisonment and his convictions for one count of interfering with the laws of the Internal Revenue Service, 26 U.S.C. § 7212(a), one count of aiding or assisting in the filing of false tax returns, id. § 7206(2), two counts of failing to file tax returns, id. § 7203, four counts of criminal contempt, 18 U.S.C. § 401(3), and three counts of making false declarations before a grand jury, id. § 1623. Prater challenges the sufficiency of the evidence, rulings about his conduct as a pro se litigant, the denial of his requests for a continuance and for additional resources, and the reasonableness of his sentence. Prater also challenges, for the first time, evidentiary rulings, alleged misconduct by the prosecution, and the effectiveness of his standby counsel. We affirm Prater's convictions and sentence, but we decline to review his argument about ineffective assistance of counsel.

Ample evidence supports Prater's convictions. Prater interfered corruptly with the laws of the Revenue Service and committed criminal contempt when he continued to solicit and perform services for clientele despite admonitions from the Service and others about the illegality of his tax avoidance scheme and a ruling of a Texas court in 2002 that his scheme was "frivolous" and that enjoined him advising or aiding persons in evading income taxes. See 26 U.S.C. § 7212(a); 18

2

U.S.C. § 401(3). The government presented testimony from Prater's former wife, Rebecca Anderson; a prosecutor, Ann Bibeau; a special master for a Texas court, Dennis O'Leary; an agent of the Federal Bureau of Investigation, John Osa; a special agent of the Service, Norm Meadows; and several former clients that, between 2002 and 2005, Prater was compensated for counseling and filing fraudulent tax documents for his clientele and that Prater disregarded the decision of the Texas court and newspaper articles, letters from the Service and his clientele, and a pamphlet from the Service warning that Prater's tax avoidance scheme was frivolous and he would be prosecuted. In October 2002, Prater counseled and assisted Robert and Evangelia Reid in filing a fraudulent tax return that failed to report any income and sought a refund of more than $9,000 dollars, but Gloria Jackson of the Service and an accountant, Frederick Lugar, testified that the Reids later met with the Service and filed an amended return stating that they owed taxes. See 26 U.S.C. § 7206(2). Prater failed to file tax returns in 2002 and 2003 although, as explained by special agent James Cortier, Prater received between $668 and $727 monthly from the Social Security Administration; Prater's bank records established that he earned over $130,000 in 2002 and over $50,000 in 2003; Prater stated on a lease application in 2002 that he earned over $200,000; and Prater reported to an insurance company in 2003 that he had an income of

3

$100,000. See id. § 7203. Prater also testified falsely before the grand jury that he had not advised others to or attempted personally to hide assets from the Revenue Service and that he had not continued to operate his business after issuance of the injunction or concealed those operations from O'Leary, who was responsible for monitoring Prater's compliance with the injunction. See 18 U.S.C. § 1623(a). Prater divulged his plan to evade the injunction to Agent Osa, and Prater opened a bank account in the name of Osa's fictitious business, Texas Carribe, in which Prater deposited thousands of dollars for services that he had performed in violation of the injunction, including advising his wife to conceal assets and Wallace Bishop to quitclaim property to avoid paying taxes. Prater argues that he acted in good faith and he did not intend to defraud the Service, but the evidence supports the jury's "resolution of [this] factual issue[]." United States v. Lankford, 955 F.2d 1545, 1560 (11th Cir. 1992). Prater admitted as true allegations that he had engaged in "false, misleading, and deceptive acts and practices" in Texas; Prater admitted violating the injunction to Osa; Prater plotted with Anderson and Osa to conceal assets from the Service; and Prater ignored warnings from the Service and numerous clients that his tax avoidance scheme was fraudulent. Prater cannot turn a blind eye to the "duties imposed upon him by the Internal Revenue Code." Cheek v. United States, 498 U.S. 192, 206, 111 S. Ct. 604, 613

4

(1991).

The district court did not abuse its discretion by circumscribing Prater's opening statement, his examination of government witnesses, or the documents that he sought to introduce into evidence. The district court ordered Prater before trial to refrain from challenging the legality of income tax laws, and Prater does not challenge the validity of that order. The district court was entitled to enforce its order by prohibiting Prater from arguing, cross-examining agent James Cortier, or admitting evidence about tax laws. See United States v. Zielie, 734 F.2d 1447, 1455 (11th Cir. 1984), abrogated on another ground by Bourjaily v. United States, 483 U.S. 171, 177–79, 107 S. Ct. 2775, 2779–80 (1987); United States v. Baptista-Rodriguez, 17 F.3d 1354, 1366 (11th Cir. 1994). The district court also reasonably prohibited Prater from arguing about his entrapment defense instead of questioning Osa. These limitations enabled the district court to "maintain the pace of the trial" and to control Prater's open defiance of the pre-trial order, and the district court acted even handedly by also limiting questioning and the admission of evidence by the government. Moore v. United States, 598 F.2d 439, 442 (5th Cir. 1979). Moreover, the district court eradicated any potential prejudice to Prater by instructing the jury not to "reflect upon" any objections, motions, or "guidance" provided to Prater and not to allow those rulings to "play any part in

5

[determining] the merits of the case" or in "assess[ing] . . . the evidence." We presume that the jury complied with that instruction. See United States v. Brazel, 102 F.3d 1120, 1145 (11th Cir. 1997).

The district court also did not abuse its discretion when it denied Prater's requests for a continuance or for additional resources to prepare for trial. Prater had six months to examine and prepare a response to discovery delivered by the government, and Prater does not argue that "additional time to examine the [discovery materials] would have affected the outcome of his case." United States v. Perez, 473 F.3d 1147, 1151 (11th Cir. 2006). The district court satisfied Prater's right of "meaningful access to the courts" by appointing standby counsel to aid Prater and giving him access to a law library, a resource that Prater used to prepare numerous pre-trial motions. Lewis v. Casey, 518 U.S. 343, 350–51, 116 S. Ct. 2174, 2179–80 (1996). Prater argues that he was denied subpoenas, but the district court advised Prater about his right to subpoena witnesses and granted his request to subpoena Brenda Vicario.

The district court did not err, much less plainly err, in its evidentiary rulings. The government was entitled to admit evidence about the annual income that Prater reported to an insurance company and the social security benefits that he received to prove that Prater was required to file tax returns in 2002 and 2003.

The government also was entitled to admit a tape-recorded conversation authenticated by William Bishop during which Prater advocated evading taxes by transferring property using a quitclaim deed, see Fed. R. Evid. 901(a), and to admit documents and testimony from Bibeau to establish that Prater violated the injunction issued by the Texas court, see id. 404(b), 902(4), 903(b)(3). Because Osa was Prater's confidante, Osa could testify that he found credible Prater's statements about concealing $25,000 from the Service by depositing the funds in four different banks. See id. 701. Prater waived any objection to Exhibit 130 by telling the district court that he did "[n]ot really" object to its admission, see United States v. Thayer, 204 F.3d 1352, 1355 (11th Cir. 2000), and the district court eliminated any possible prejudice created by Anderson's testimony about an article disparaging tax avoidance schemes by instructing the jury to consider the article, not for its truth, but to determine Prater's "reaction" and response to its contents, see Brazel, 102 F.3d at 1145.

Prater has failed to establish that the government engaged in any conduct that was prejudicial to Prater's substantial rights. Comments by the government during its opening argument that Prater "falsely claimed" that he could evade tax laws and that he was a "defier of the law" were "merely a characterization of the evidence to be adduced at trial, subject, of course, to the jury's evaluation of the

7

accuracy of the characterization." United States v. Correa-Arroyave, 721 F.2d 792, 795 (11th Cir. 1983). Likewise, remarks by the government during closing statements that the "Judge had told [Prater that] his positions were frivolous" and that Prater "lied intentionally," were supported by the evidence about the ruling of the Texas court and Prater's false statements to the grand jury. Prater argues that the government failed to disclose that his former girlfriend, Margaret Tilus, would testify, but Prater does not argue that his cross-examination or trial strategy would have differed had Tilus been included on the pretrial witness list provided by the government. See United States v. Bagley, 473 U.S. 667, 682–83, 105 S. Ct. 3375, 3383–84 (1985). That the government was admonished not to lead witnesses or seek to admit certain evidence does not equate to misconduct, and the government is not to blame for Bibeau's characterization of Prater's tax program as a "tax scam." Because Prater has failed to identify any individual instances of prosecutorial misconduct, "no cumulative error[] can exist." United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004).

We decline to address Prater's argument that standby counsel was ineffective. Prater complains that counsel "did nothing whatsoever to assist [him]" and he identifies two purported errors by counsel, but "[t]he record is not sufficiently developed for us to decide this claim." United States v. Hill, 643 F.3d

8

807, 879 n.38 (11th Cir. 2011) (applying United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002)). Prater can present his argument in a postconviction motion. 28 U.S.C. § 2255.

Prater's sentence is procedurally reasonable. Prater was subject to enhancements for having "organize[d] or l[ed]" a tax avoidance scheme "that involved five or more participants or was otherwise extensive," United States Sentencing Guidelines Manual § 3B1.1(a) (Nov. 2009), and having "willfully obstructed or impeded, or attempted to obstruct or impede," the investigation and prosecution of his crimes, id., § 3C1.1. Prater's misconduct is extensive: his tax avoidance scheme involved over 700 clients; he violated an injunction of a Texas court by continuing to operate his tax avoidance scheme and attempting to conceal his wrongdoing; he attempted to hide assets for himself and others from the Service; Prater asked Osa to lie to and prepare fraudulent statements to submit to the Service; Prater made false statements to a grand jury denying his crimes; Prater solicited Vicario to testify falsely before the grand jury; and Prater during trial defied repeatedly an order that prohibited him from challenging the tax laws. In a telephone call to Vicario from jail, Prater boasted that he was "gonna try to offer things into evidence" knowing that "the Judge is gonna deny it" then "ask the same question and . . . ask to offer it as an exhibit . . . just so the jury can hear me

say this 50 times and the Judge say denied."

Prater's sentence also is substantively reasonable. Prater stated falsely at sentencing that he "retired back in 2002," insisted that he had "never seen a law that says [American citizens] have to pay tax on our income," and asserted that he "would probably do the same thing if [he] were a young man again." Based on his statements and conduct at trial, the district court "considered the provisions of 18 U.S.C. § 3553(a)" and reasonably concluded that Prater was a "congenitally predetermined con m[a]n" who, having been arrested previously for insurance and credit card fraud and been dismissive of the injunction entered by the Texas court, required a sentence of imprisonment that would "disable[] [him as much] as possible" from "continu[ing] exactly the same behavior." Presented with an advisory guideline range between 292 and 365 months of imprisonment, the district court reasonably determined that imprisonment for 336 months was necessary "to protect the public from further episodes of [Prater's] malevolence," punish Prater for his crimes, promote respect for the law, and address Prater's unrepentant recidivism. The district court did not abuse its discretion.

We **AFFIRM** Prater's convictions and sentence.